726 So.2d 328 (1999)
Milton GALE, Appellant,
v.
STATE of Florida, Appellee.
No. 97-03380.
District Court of Appeal of Florida, Second District.
January 15, 1999.
Pat T. Dicesare, II, of Dicesare, Davidson & Barker, P.A., Lakeland, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Anne E. Sheer, Assistant Attorney General, Tampa, for Appellee.
NORTHCUTT, Judge.
Milton Gale argues that his convictions for three counts of robbery with a firearm must be set aside because the evidence was insufficient to support the verdict and judgment. We agree, reverse Gale's convictions, and direct the trial court to discharge him. Our resolution of this issue makes it unnecessary to discuss the other points Gale raised on appeal.
The charges against Gale stemmed from a robbery at a motel in St. Petersburg. The evidence at trial showed that two men or boys, wearing masks and carrying guns, entered the motel at about 5:10 p.m. They robbed the desk clerk and two guests. None of the victims could identify the robbers. The State also introduced a videotape taken from a security camera. It recorded a green Isuzu Rodeo driving through the motel parking lot at 5:06 p.m.
Shortly after the robbery, Ms. Dixon, who lived near the motel, saw two boys running down the street wearing masks. They removed the masks and threw them in a trash can. The witness later identified the boys from a police photo-pak as David Shavers and Dontrell Baker, Gale's codefendants.
Several young men in the neighborhood also saw the boys dispose of something in Dixon's trash can and place other items in a dumpster. They investigated, spied the masks in Dixon's trash, and then found guns and a T-shirt in the dumpster. At that point, a man drove up in a green Isuzu Rodeo with vanity license plates that read "Milk Man." He got out of the truck, carrying what appeared to be a CB radio, and told the young men about the motel robbery. He said he was a detective, and he asked if they had *329 seen anything suspicious. They told him about the boys who had disposed of the masks, guns, and T-shirt. Gale took the guns from the dumpster and drove away in the direction that the boys had run.
Meanwhile, the police arrived at the motel to investigate the robbery. Sometime between 5:25 p.m. and 6:00 p.m.[1], the officers went to the neighborhood abutting the motel and interviewed the young men and Ms. Dixon. They recovered the masks and the T-shirt from the trash receptacles, and heard the story about the man in the Isuzu who had driven off with the guns. Although several officers interviewed the boys that day, Officer Melanson was the only one who testified at trial. She estimated that she first put out an advisory on the Isuzu at 6:45 p.m.
After the police developed Gale as a suspect, the neighborhood boys identified his picture in a police photo-pak as the man who had taken the guns. Gale's fingerprints were found on a door and the service counter at the motel.
Gale testified at trial. He claimed that on the day of the robbery he had gone to the motel several times to check on the availability of a room. He was driving away shortly after five p.m. when he heard about the robbery on his police scanner. He went to an ex-girlfriend's apartment that happened to overlook the area where the robbers had run, a pedestrian path between the motel and a residential neighborhood. He left the apartment, walked over to the neighborhood, and spoke with some boys who reported seeing two people run down the path. Gale testified that he then returned to the apartment parking lot, got in his green Isuzu Rodeo, and drove away in the direction the robbers had run. As he was driving he saw that the neighborhood boys were looking in a dumpster. He stopped, saw the guns, and took them away so the boys wouldn't injure themselves. He then drove in search of the robbers.
Sometime between 5:45 p.m. and 6:05 p.m., Gale heard on his police scanner that the authorities were looking for a truck like his. Panicked, he returned to his room at another motel and told a friend what had occurred. The friend offered to return the guns to the dumpster. The guns were never recovered.
The authorities finally located Gale and brought him in for questioning. At trial he admitted that during this interview he lied when he told the police he had not been near the dumpster on the day of the robbery, and had not taken the guns. He explained that he had lied because he was afraid.
The State contended that Shavers and Baker actually committed the robbery, but that Gale was the mastermind who planned the operation and disposed of incriminating evidence afterward. As such, the State's theory was that Gale was a principal. In order to convict on this theory, the evidence must prove that the defendant aided, abetted, counseled, hired or otherwise procured the offense. See § 777.011, Fla. Stat. (1995).
To aid and abet means to help the person who actually committed the crime by doing or saying something that caused, encouraged, incited or assisted the criminal. See Swanson v. State, 713 So.2d 1097 (Fla. 4th DCA 1998). When the charged conduct is a specific intent crime, as was the case here, the State must prove the required specific intent to participate. "Mere presence at the scene, including driving the perpetrator to and from the scene or a display of questionable behavior after the fact, is not sufficient to establish participation." Valdez v. State, 504 So.2d 9 (Fla. 2d DCA 1986). While intent may be shown by circumstantial evidence, such proof must not only be consistent with the guilt of the accused, it must also be inconsistent with any other reasonable hypothesis of innocence. See id. at 10; see also State v. Law, 559 So.2d 187 (Fla. 1989).
Boiled down to its essentials, the State's circumstantial evidence of Gale's intent to participate in the crimes showed that he: (1) had been at the motel on the day of the robbery; (2) knew about the robbery shortly after it happened; (3) took the robbers' *330 guns from the dumpster; (4) gave the guns to a friend to return to the dumpster, but they were never recovered; and (5) lied to the police when first interrogated. The State presented no evidence that linked Gale to the robbers.
Gale presented a reasonable hypothesis of innocence that was consistent with the State's evidence. He explained how his fingerprints and his truck came to be at the motel, and how he knew of the robbery shortly after it occurred. He also gave an innocent reason for taking the guns from the dumpster. Although this action and Gale's decision to give the guns to a friend are suspicious, that is the type of questionable after-the-fact behavior that we found insufficient to establish participation in Valdez. The only potential discrepancy in the evidence was between Officer Melanson's recollection of when she put out an advisory on the Isuzu Rodeo and Gale's claim about the time he heard it. But the State's testimony did not necessarily contradict Gale's. Melanson stated she did not know if any of the other officers had called in an advisory on the truck. Because the State's evidence was not inconsistent with Gale's theory of the events, the State failed to meet its burden. See Law, 559 So.2d at 189. Accordingly, the trial court should have granted Gale's motion for judgment of acquittal.
Reversed and remanded with directions to discharge Gale.
PATTERSON, A.C.J., and DANAHY, PAUL W., (Senior) Judge, Concur.
NOTES
[1] One of the young men estimated that the police arrived at 5:25 p.m.; another thought it was about 5:55 p.m. The officer who testified at trial stated that she began interviewing the young men between 5:45 p.m. and 6:00 p.m. However, she was not the first officer who arrived in the neighborhood.