731 So.2d 712 (1999)
Robert LEONARD, Appellant,
v.
STATE of Florida, Appellee.
No. 96-04305.
District Court of Appeal of Florida, Second District.
March 5, 1999.
*713 James Marion Moorman, Public Defender, and Jennifer Y. Fogle, Assistant Public Defender, Bartow, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Patricia E. Davenport, Assistant Attorney General, Tampa, for Appellee.
PARKER, Chief Judge.
Robert Leonard appeals the final judgment after the jury found him guilty of burglary, assault and battery, sexual battery, kidnaping, and battery of a person over sixty-five years of age. We affirm.
On July 22, 1995, at 4:30 a.m., an intruder broke into an elderly female victim's condominium unit in Venice, Florida. After he tied the victim down and covered her head with a pillowcase, he sexually assaulted and battered her. Before leaving, the intruder took $25, some coins, a gold wedding band, and a yellow gold necklace with a strand of white gold intertwined in it. He left the apartment in disarray.
The detectives discovered several items of evidence. They found a Hershey candy bar wrapper in the victim's bedroom, apparently from a box of Hershey bars located in the victim's refrigerator, and a flash-light *714 which did not belong to the victim. The palm print on the flashlight did not match Leonard's palm print. The crime scene technicians retrieved two cigarette butts from the toilet, seven Caucasian pubic hairs from a pillowcase, and a partial thumbprint from the cellophane wrapper covering the bottom of a Hershey box located in the victim's refrigerator.
John Kelly, the victim's neighbor, testified that he heard a noise outside his residence at 1:00 a.m. on July 22, 1995. When he went outside to check on the noise, Kelly encountered a white male, standing ten feet away in a darkened area. The man told Kelly that he was looking for Building C in the complex. Kelly described the man as being five feet ten and approximately 150 to 160 pounds. Kelly was unsure whether the man had facial hair or not. Later, Kelly was unable to pick Leonard out of a six-photo line-up.
Leonard was arrested in January 1996. The arrest report described Leonard as being five feet eight inches tall and weighing 150 pounds. His hair was listed as brown. After Leonard was given his Miranda warnings, he stated that he would never commit a sexual assault. The lead detective testified that when he asked Leonard if he had committed a burglary in Venice, Leonard responded that he did not remember. However, upon cross-examination, the detective admitted that Leonard stated at his deposition that "I never done a burglary." When the detective asked Leonard if he knew how his finger-print got on the candy box in the victim's refrigerator, Leonard stated that he did not know. Finally, Leonard could not remember whether or not he had sold a necklace to the pawnshop in August.
The State presented the following evidence to link Leonard to the crime. Through driver's license and fingerprint identification, the detectives determined that three weeks following the crime, Leonard pawned a gold necklace, which did not have a clasp nor a strand of white gold. The detectives retrieved the pawned necklace in order to compare it to two other necklaces which were identical to the missing necklace taken from the victim. The victim and her sister had three necklaces made from one long strand. The victim's sister and her niece still had the other two necklaces. The State presented a comparison of the two necklaces with the pawned necklace and asserted that the white strand of gold could have been removed before Leonard pawned it in August. In order to remove the white strand of gold, Leonard would have had to remove the clasp.
The pawnshop owner identified Leonard as the person who pawned the gold necklace. He remembered that Leonard had a mustache and vaguely recalled that he also had a beard.
Although the crime scene technician who retrieved the cigarette butts from the toilet could not recall the brand, another detective, who observed the cigarette butts, identified them as Camel cigarettes. At trial, this evidence had deteriorated to such an extent that there was no way to determine the cigarette brand.
The crime laboratory expert testified that the pubic hairs, which were collected from a pillowcase at the crime scene, could or could not have come from Leonard. The expert testified that the pubic hairs from the crime scene and Leonard's pubic hairs were Caucasian and exhibited the same type of banding; however, there was no data base to further match how many other people with Caucasian hairs had that same type of banding. Additionally, there was not enough DNA in the hairs to complete any match with Leonard's DNA. An expert in serology testified that she examined the victim's nightgown and several items of the victim's bedding and all of the examinations were negative for any semen. None of her examinations provided any evidence that implicated Leonard.
Finally, the fingerprint expert testified that there was no way to determine how long the partial thumbprint had been on *715 the package, nor when the print was placed on the package. The victim's niece testified that the victim often purchased boxes of Hersheys from a Publix supermarket in Venice to give to the children when they visited.
The defense submitted the following evidence. Leonard's girlfriend testified that she had lived with Leonard since 1994, and that the pawned necklace matched the description of a necklace Leonard had kept in a jewelry box since 1994. Additionally, she testified that she and Leonard often shopped at the same Publix supermarket used by the victim, and that she had seen Leonard pick up candy boxes when choosing candy for her children. However, Leonard would sometimes return the boxes to the shelf if they did not have enough money to purchase the candy. On July 21, 1995, Leonard went to bed with her and he was in bed when she fell asleep at 2:00 a.m., on July 22, 1995. When she awoke later that same morning, Leonard was still in the bed with her. The girlfriend testified that since they had been together, Leonard had always had a beard and a mustache.
The girlfriend's mother and sister testified that they had seen Leonard at least weekly since 1994, and that he always had a beard and a mustache. The sister described Leonard's beard as thin and light-colored.
Finally, the defense pointed out through cross-examination that the victim picked two other individuals out of a photo line-up which included Leonard. Leonard did not testify.
During rebuttal, the State presented testimony from a detective that, during two interviews, the girlfriend told the detective that Leonard did not own any jewelry. Additionally, the detective stated that the girlfriend told him that she never knew Leonard to wear jewelry. Finally, she told him that Leonard had shaved off his beard in the past, but she did not remember when that had occurred.
Obviously, this is a circumstantial evidence case. As the supreme court noted in McArthur v. State, 351 So.2d 972 (Fla. 1977), a review of its prior decisions in similar circumstantial evidence cases is not helpful since the nature and quantity of circumstantial evidence in each case is unique. However, in State v. Law, 559 So.2d 187 (Fla.1989), the supreme court set forth the trial court's function in reviewing the evidence in a circumstantial case. The court stated:
A motion for judgment of acquittal should be granted in a circumstantial evidence case if the state fails to present evidence from which the jury can exclude every reasonable hypothesis except that of guilt. See Wilson v. State, 493 So.2d 1019, 1022 (Fla.1986). Consistent with the standard set forth in Lynch [v. State, 293 So.2d 44 (Fla. 1974)], if the state does not offer evidence which is inconsistent with the defendant's hypothesis, "the evidence [would be] such that no view which the jury may lawfully take of it favorable to the [state] can be sustained under the law." 293 So.2d at 45. The state's evidence would be as a matter of law "insufficient to warrant a conviction." Fla. R.Crim. P. 3.380.
It is the trial judge's proper task to review the evidence to determine the presence or absence of competent evidence from which the jury could infer guilt to the exclusion of all other inferences. That view of the evidence must be taken in the light most favorable to the state. Spinkellink v. State, 313 So.2d 666, 670 (Fla.1975), cert. denied, 428 U.S. 911, 96 S.Ct. 3227, 49 L.Ed.2d 1221 (1976). The state is not required to "rebut conclusively every possible variation"3 of events which could be inferred from the evidence, but only to introduce competent evidence which is inconsistent with the defendant's theory of events. See Toole v. State, 472 So.2d 1174, 1176 (Fla.1985). Once that threshold burden is met, it becomes the jury's *716 duty to determine whether the evidence is sufficient to exclude every reasonable hypothesis of innocence beyond a reasonable doubt.
If the rule were not applied in this manner, a trial judge would be required to send a case to the jury even where no evidence contradicting the defendant's theory of innocence was present, only for a verdict of guilty to be reversed on direct appeal. We agree with the Fowler [v. State, 492 So.2d 1344 (Fla. 1st DCA 1986)] court that
it is for the court to determine, as a threshold matter, whether the state has been able to produce competent, substantial evidence to contradict the defendant's story. If the state fails in this initial burden, then it is the court's duty to grant a judgment of acquittal to the defendant as to the charged offense, as well as any lesser-included offenses not supported by the evidence.... Otherwise, there would be no function or role for the courts in reviewing circumstantial evidence, as was stated so well in Davis v. State, 436 So.2d [196 (Fla. 4th DCA 1983) ], 200: "If we were to follow the state's logic, a trial judge would never... grant a motion for judgment of acquittal pursuant to Florida Rule of Criminal Procedure 3.380 when the evidence [is] circumstantial. Instead, every case would have to go to the jury."
Fowler, 492 So.2d at 1347.
3 State v. Allen, 335 So.2d 823, 826 (Fla. 1976).
Law, 559 So.2d at 188-89.
Further, as the supreme court noted in Long v. State, 689 So.2d 1055, 1057 (Fla.1997), in which it directed a trial court to enter an order of acquittal in favor of a defendant charged with murder in the first degree, the State in a circumstantial evidence case must produce evidence which is "inconsistent with any reasonable hypothesis of innocence." Id. Furthermore, "evidence that creates nothing more than a strong suspicion that a defendant committed the crime is not sufficient to support a conviction." Id. (citations omitted).
This court recently discussed Law in Gale v. State, 726 So.2d 328 (Fla. 2d DCA 1999). In this robbery with a firearm case, this court stated:
Boiled down to its essentials, the State's circumstantial evidence of Gale's intent to participate in the crimes showed that he: (1) had been at the motel on the day of the robbery; (2) knew about the robbery shortly after it happened; (3) took the robbers' guns from the dumpster; (4) gave the guns to a friend to return to the dumpster, but they were never recovered; and (5) lied to the police when first interrogated. The State presented no evidence that linked Gale to the robbers.
Gale presented a reasonable hypothesis of innocence that was consistent with the State's evidence. He explained how his fingerprints and his truck came to be at the motel, and how he knew of the robbery shortly after it occurred. He also gave an innocent reason for taking the guns from the dumpster. Although this action and Gale's decision to give the guns to a friend are suspicious, that is the type of questionable after-the-fact behavior that we found insufficient to establish participation in Valdez.[1] The only potential discrepancy in the evidence was between Officer Melanson's recollection of when she put out an advisory on the Isuzu Rodeo and Gale's claim about the time he heard it. But the State's testimony did not necessarily contradict Gale's. Melanson stated she *717 did not know if any of the other officers had called in an advisory on the truck. Because the State's evidence was not inconsistent with Gale's theory of the events, the State failed to meet its burden. See Law, 559 So.2d at 189. Accordingly, the trial court should have granted Gale's motion for judgment of acquittal.
Id. at 329-30 (footnote added).
Turning to this case, the State's evidence against Leonard is: (1) Leonard is a Caucasian male, and Caucasian pubic hairs were found at the crime scene; (2) Leonard smokes Camel cigarettes, and Camel cigarette butts were found at the crime scene; (3) Leonard pawned a necklace which is similar to the necklace stolen from the victim's residence; (4) Leonard did not remember pawning a similar necklace; (5) Leonard's size is similar to the size given by the victim and Kelly; (6) Leonard's fingerprint was found on a candy box in the victim's refrigerator; and (7) Leonard had no explanation to the detective as to how his fingerprint got on the candy box in the victim's refrigerator.
The defense offered the following evidence in support of Leonard's innocence: (1) during police interrogation, Leonard denied committing the sexual battery; (2) according to the detective's deposition, Leonard told the detective that he did not commit the burglary; (3) the two necklaces entered into evidence were not identical; (4) Leonard's facial hair did not match the victim's description; (5) the pubic hairs could not be identified as coming from Leonard, and as the supreme court stated in Long, 689 So.2d at 1058, "[h]air comparison cannot constitute a basis for positive personal identification because hairs from two different people may have precisely the same characteristics"; (6) there was no incriminating DNA or semen evidence; (7) Leonard's girlfriend provided an alibi; (8) Leonard's girlfriend provided an explanation as to how Leonard's fingerprint could have been placed on the Hershey candy box, and the fingerprint expert could not determine when or where the print was placed on the candy box; and (9) at the time the crime was committed, one witness testified that Leonard had a beard and a mustache, and a second witness described Leonard as having a thin and light-colored beard. The State's rebuttal to the defense's evidence was that the girlfriend told the detective that Leonard did not own any jewelry and that Leonard had shaved off his beard during her time with Leonard.
The difficult question in this case is whether the State has satisfied the requirements of Law by providing competent substantial evidence to contradict Leonard's story. If the State has, then the trial court was correct in permitting this case to be submitted to the jury. Leonard's story offered through his statement to the police and through the testimony of his witnesses was that he was not at the crime scene.
We conclude that, if at the close of the State's case where there is prima facie evidence of guilt, Law does not require a trial court to grant a judgment of acquittal based upon the defendant denying to a law enforcement officer that he committed the crime. Taking the evidence in the light most favorable to the State, we conclude that Leonard's denial that he committed the crime is insufficient to grant a motion for judgment of acquittal[2] after the State rested its case-in-chief.
We must next consider whether the trial court was correct in denying the motion for judgment of acquittal at the close of all of the evidence.[3] As to the *718 issue of facial hair, we conclude that the trial court was correct in denying the judgment of acquittal. We reach that conclusion because the recollection of an eighty-three-year-old woman as to facial hair when she was attacked in a darkened room with her head covered, should not be accepted as insufficient evidence to remove the issue of the appearance of the attacker from jury consideration. Furthermore, the State presented evidence that Leonard's girlfriend told the detective that Leonard had shaved his beard at some time during their relationship. Also, one of Leonard's witnesses described Leonard's beard as thin, which based upon how the crimes were committed could have led the victim to mistakenly describe her attacker as clean shaven.
The fingerprint evidence is the most troublesome. What evidence has the State offered to rebut the girlfriend's explanation of how Leonard's fingerprint was on the Hershey candy box in the victim's refrigerator? Referring again to Law, the supreme court stated:
It is the trial judge's proper task to review the evidence to determine the presence or absence of competent evidence from which the jury could infer guilt to the exclusion of all other inferences. That view of the evidence must be taken in the light most favorable to the state. The state is not required to "rebut conclusively every possible variation" of events which could be inferred from the evidence, but only to introduce competent evidence which is inconsistent with the defendant's theory of events. Once that threshold burden is met, it becomes the jury's duty to determine whether the evidence is sufficient to exclude every reasonable hypothesis of innocence beyond a reasonable doubt.
Law, 559 So.2d at 189 (citations omitted; footnote omitted).
In Long, the supreme court reaffirmed its decision in Jaramillo v. State, 417 So.2d 257 (Fla.1982), another circumstantial evidence case. In Jaramillo, two homicide victims were found in the dining room of a residence, each shot three times in the head. The male victim's hands were bound together by a cord. The female victim's hands were handcuffed together. See id. The evidence linking the defendant to the crime was a knife on the dining room table with the defendant's fingerprint and a grocery bag located next to a dining chair with the defendant's fingerprint on it. A fingerprint technician stated that he could not determine when the prints were placed on the knife or the bag. See id. at 258.
The defendant testified that he was a friend of the male victim's nephew, who lived with the victims. Four days before the crime, the defendant and the nephew were cleaning up the residence and the nephew directed the defendant to the dining room table to obtain a knife for cutting boxes. The defendant entered the dining room, removed the knife from the grocery bag, took the wrapper off the knife, and left the wrapper. After cutting the boxes, the defendant returned the knife to the dining room table. See id. The defense, through cross-examination of the State's witnesses, established that numerous latent fingerprints at the scene did not match the defendant, including a fingerprint located on the handcuffs and a fingerprint on the knife wrapper. See id. In reversing the two murder convictions, the supreme court stated that even where the fingerprints produced a positive identification, the State must still introduce some other evidence to link a defendant to the crime. See id. at 257.
In this case, unlike Jaramillo, in addition to the fingerprint there was a necklace that Leonard pawned three weeks after the crime, which Leonard stated he *719 could not remember pawning. Additionally, there was no lawful reason for Leonard to have been in the victim's residence. And last, the trial judge was in a position to compare the pawned necklace with a necklace which was identical to the one stolen from the victim's residence and to decide whether the two necklaces were similar enough to permit the jury to determine if the necklace that Leonard pawned could have been the one taken from the victim.
If Law does not require the State to rebut conclusively every possible variation of events which could be inferred from the evidence, but only to introduce competent evidence which is inconsistent with Leonard's theory of events, we conclude that the trial court could have determined that Leonard's theory of events that his fingerprints could have been placed on the bottom of the same box of candy at the same supermarket where the victim subsequently purchased the candy box was so remote that it was inconsistent with the State's evidence. The trial court had before it evidence that the attacker removed a candy bar from the Hershey candy box during this criminal episode.
Affirmed.
SALCINES, J., and DANAHY, PAUL W. (Senior) Judge, Concur.
NOTES
[1] Valdez v. State, 504 So.2d 9 (Fla. 2d DCA 1986) (held that when the charged conduct is a specific intent crime, mere presence at the scene, including driving the perpetrator to and from the scene or a display of questionable behavior after the fact, is not sufficient to establish participation).
[2] When a defendant moves for a judgment of acquittal at the close of the State's case, the only issue is whether the State has presented sufficient evidence to establish a prima facie case. In viewing the State's evidence, all reasonable inferences of that evidence are drawn in favor of the State. See Williams v. State, 511 So.2d 740 (Fla. 5th DCA 1987).
[3] At the close of all of the evidence, a trial court should not grant a motion for judgment of acquittal unless there is no view of the evidence which the jury might take favorable to the State that can be sustained by law. See Taylor v. State, 583 So.2d 323 (Fla.1991).