795 So.2d 1096 (2001)
Kevin PARKER, Appellant,
v.
STATE of Florida, Appellee.
No. 4D99-1204.
District Court of Appeal of Florida, Fourth District.
October 3, 2001.
*1097 Carey Haughwout, Public Defender, and Joseph R. Chloupek, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Jeanine M. Germanowicz, Assistant Attorney General, West Palm Beach, for appellee.

ON MOTION FOR REHEARING
GROSS, J.
We grant the state's motion for rehearing, withdraw our previous opinion, and issue the following.
The primary issue in this case is whether the trial court erred in failing to grant Kevin Parker's motions for judgment of acquittal, such that he is entitled to be discharged for eleven felony offenses.[1] We find that the evidence was sufficient for the case to be submitted to the jury.
In moving for a judgment of acquittal, a defendant admits not only the facts in evidence, but admits every conclusion favorable to the state that a jury might fairly and reasonably infer from the evidence. See Lynch v. State, 293 So.2d 44, 45 (Fla.1974); Green v. State, 706 So.2d *1098 884, 885 (Fla. 4th DCA 1998). A trial court should not grant a motion for judgment of acquittal unless, when viewed in the light most favorable to the state, the evidence does not establish a prima facie case of the defendant's guilt. See Green, 706 So.2d at 885.
In the light most favorable to the state, the evidence at trial demonstrated that appellant and Robert Rimmer were friends before the May 2, 1998 robbery. At the end of April or the beginning of May, appellant and Rimmer spoke to each other in a parking lot.
The day of the robbery, appellant drove up to the Audio Logic Store at the same time as Rimmer. Appellant parked in front of the store and entered it through the front door. Rimmer arrived in a different car and parked toward the back of the store.
In the lobby of the store, appellant encountered a customer, Kimberly Davis Burke, and her child. After talking briefly to the child, appellant left the lobby through the back door. The door led to Audio Logic's installation area where the robbery occurred.
A minute or two after appellant left through the back door, Rimmer entered the lobby through the same door. He told Davis Burke that her boyfriend wanted to talk to her in the installation area. When Davis Burke entered the installation area, she saw two customers and two employees laying on the floor with their hands duct taped behind their backs. She sat down on the floor and watched Rimmer and another male move boxes out of the store's inventory room into Rimmer's Ford Probe. The man helping Rimmer was not appellant. Davis Burke did not see appellant at any time while in the installation area. After Rimmer and the unidentified man finished loading Rimmer's car with boxes, Rimmer shot and killed the two store employees.
On May 7, 1998, Rimmer rented a storage unit and, along with an unidentified male, deposited the stolen merchandise there. The police entered the storage unit on May 14, 1998 and recovered the merchandise. Twenty-two fingerprints lifted from six of the boxes were identified as appellant's. The co-owner of Audio Logic testified that the boxes had been removed from locked display cases and from areas in the store not accessible to customers, such as the back inventory room. Appellant had never worked for an auto alarm or audio electronics company or for any of the companies manufacturing the kinds of items taken from Audio Logic, so this potential avenue of contact with the boxes was foreclosed by the evidence.
After Rimmer was arrested on May 10, 1998, he called appellant's girlfriend, with whom appellant stayed three or four times a week, and left the message, "Tell the people I'm all right, I'm all right."
The police arrested appellant in June, 1998. During his interrogation, appellant denied he had ever been in the inventory room or office area. Contrary to the testimony of Davis Burke, he claimed he left the store not through the back door in the lobby, but through the front door. He asserted that he then walked around back to the installation area, saw "something going down," and immediately left.
When told that the police had lifted his fingerprints from the retrieved boxes, appellant stated the prints were not his and that someone must have put them there. At trial, appellant did not testify or offer any witnesses. His statement to the police was his only version of the facts in evidence.
To convict appellant as an aider and abettor, the state had to show that he (1) assisted the actual perpetrator by doing something that caused, encouraged, assisted, or incited the perpetrator to actually *1099 commit the crime; and (2) intended to participate in the crime. See Wyatt v. State, 755 So.2d 671, 673 (Fla. 4th DCA 1999); Swanson v. State, 713 So.2d 1097, 1099-1100 (Fla. 4th DCA 1998). These elements of aiding and abetting may be proven by a combination of surrounding circumstances from which a jury can reasonably infer a defendant's guilt. See A.B.G. v. State, 586 So.2d 445, 447 (Fla. 1st DCA 1991).
The evidence was sufficient to justify the denial of the motion for judgment of acquittal. See Benedith v. State, 717 So.2d 472, 475 (Fla.1998). See also Leonard v. State, 731 So.2d 712, 718 (Fla. 2d DCA) (holding the trial court properly denied defendant's motion for judgment of acquittal, although defendant offered evidence as to how his fingerprints were placed on a candy box found at the scene of the crime) rev. denied, 735 So.2d 1286 (Fla.1999). This case is distinguishable from cases where a conviction is based on a fingerprint alone. For example, unlike Shores v. State, 756 So.2d 114, 116 (Fla. 4th DCA 2000), fingerprint evidence was not the only evidence linking appellant to the crime, nor were appellant's fingerprints found on objects "accessible to the public." Id.
Nor is this case controlled by those cases where the only evidence of guilt is a defendant's presence at the scene of the crime "at or near the time the crime occurred." Johnson v. State, 249 So.2d 452, 454 (Fla. 4th DCA 1971). This was not a case without fingerprint evidence, where the defendant could not be placed at the crime scene. Cf. Hall v. State, 500 So.2d 661, 662-63 (Fla. 1st DCA 1986) (reversing the trial court's denial of defendant's motion for judgment of acquittal where defendant could not be placed at the scene of the crime and was convicted solely on evidence that she lied about her whereabouts during the crime and had been seen with another principal in the crime prior to its commission).
Appellant contends in his initial brief that the reasonable hypothesis of his innocence was "that his fingerprints were placed on the property stolen from Audio Logic at a time other than during the crimes committed ... by co-defendant Robert Rimmer." However, the state introduced competent evidence at trial inconsistent with that theory. Appellant's own statement to the police refuted the hypothesis of innocence he offers on appeal; a detective testified to appellant's flat denial that the fingerprints were his and to his claim that someone else had put his prints on the boxes. The jury was entitled to reject such an unreasonable explanation of the presence of appellant's fingerprints.
In Lewis v. State, 777 So.2d 456, 458 (Fla. 4th DCA 2001), we reiterated the standard set forth in State v. Law, 559 So.2d 187 (Fla.1989), that the state is not required to "rebut conclusively every possible variation" of events which could be inferred from the evidence, but only to introduce competent evidence which is inconsistent with the defendant's theory of events. Once that threshold burden is met, it is the jury's duty to determine whether the evidence is sufficient to support a conviction.
This case contrasts with those circumstantial evidence cases where the evidence at trial supported a defendant's reasonable hypothesis of innocence consistent with the state's evidence. Cf. Jaramillo v. State, 417 So.2d 257, 257 (Fla.1982) (finding that defendant's reasonable explanation as to how his fingerprints came to be on items in the victims' home was not inconsistent with the state's evidence); West v. State, 585 So.2d 439, 441 (Fla. 4th DCA 1991) (finding that the state's own evidence negated defendant's knowledge that a crime was about to be committed *1100 rendering the state's circumstantial evidence insufficient to support a "guilty verdict for one not directly active in the crime"); Gale v. State, 726 So.2d 328, 330 (Fla. 2d DCA 1999) (finding that the defendant's reasonable theory of the events was not inconsistent with the state's evidence therefore the state did not meet its burden). In applying the law of circumstantial evidence under Law, a court should not concoct fictional hypotheses of innocence which contradict the defendant's implausible version of the facts in evidence. 559 So.2d at 188-89.
The state's case presented numerous factors pointing to appellant's guilt: his association with Rimmer, his arrival at the crime scene at the same time as Rimmer, the conflict between his testimony and that of Davis Burke about how he left the store, twenty-two of his fingerprints on six of the boxes of stolen property, and his lame explanation of his fingerprints on the boxes of stolen goods. There was more than enough smoke to let the jury decide if appellant was responsible for the fire.
Another issue on appeal concerns the trial judge's decision not to give a nonstandard jury instruction proposed by the defense.
The decision not to give a supplemental, non-standard jury instruction fell within the discretion of the court. See, e.g., Henry v. State, 359 So.2d 864, 866 (Fla.1978). This was not a case where the jury was misled by the standard instruction. The standard instruction on principals adequately stated the law.
In a previous decision, when faced with a defense request to give a "mere presence" instruction similar to the proposed instruction in this case, we held that the matter was "well covered" by the instruction on principals. Wolack v. State, 464 So.2d 587, 588 (Fla. 4th DCA 1985). The first district has ruled that proposed instructions identical to those in this case were "sufficiently addressed" by the standard instruction on principals. Williams v. State, 492 So.2d 1388, 1389 (Fla. 1st DCA 1986); accord McGuire v. State, 639 So.2d 1043, 1047 (Fla. 5th DCA 1994). The trial judge did not abuse his discretion in giving only the standard jury instruction on principals.
To the dissent, the proposed instruction here was necessary because the case was "so tenuous as to raise concerns for due process." The propriety of the trial court's decision not to give a special instruction on a legal matter does not turn on whether the case involves "circumstantial" evidence. The supreme court has abandoned the former standard instruction on circumstantial evidence, finding it to be unnecessary in light of the standard instructions on reasonable doubt and burden of proof. See In re Standard Jury Instructions in Criminal Cases, 431 So.2d 594, 595 (Fla.1981). The decision to give additional instructions, even in a circumstantial case, rests in the discretion of the trial judge. See Branch v. State, 685 So.2d 1250, 1253 (Fla.1996).
The trouble with the dissent's approach is that it proposes an imprecise rule of law which trial courts would have difficulty in applying in future cases. To apply the rule of law suggested by the dissent, a trial judge would have to view the evidence in a circumstantial case in the light most favorable to the defense. Then, if the state's case is "equivocal," the judge would be required to give a further instruction, if requested, and the instruction would qualify as an "additional instructional safeguard."
AFFIRMED.
TAYLOR, J., concurs.
FARMER, J., dissents with opinion.
*1101 FARMER, J., dissenting.
Robert Rimmer and an unidentified accomplice robbed Audio Logic, a stereo equipment store.[2] During the robbery, they ordered two customers and two store employees to lie on the floor, binding their hands with duct tape. They took one customer's wallet and cellular phone and tried to take the other's wallet. Rimmer shot and killed the two employees and threatened one of the customers. The state charged Rimmer with two counts of first degree murder, three counts of armed robbery, four counts of armed kidnapping, one count of attempted armed robbery, and one count of aggravated assault. The State also charged defendant with the same crimes on the theory that he was a principal. The case was tried to a jury.
From the state's advantage, the facts proved at trial are these. Defendant knew Rimmer, and they had spoken to each other fewer than ten times in the year preceding the crime. Sometime in the month before the crime they spoke in the parking lot of defendant's girlfriend, Jenette. On the morning of the robbery, defendant borrowed Jenette's car to have the stereo system's wires fixed. Jenette did not remember when he returned home, but when he did he told her that he had been to a stereo store and that, after seeing "some people," he left through the back door. She did not see any boxes of stolen stereo equipment in the car after he returned.
Before the robbery occurred, a customer named Kimberly was in the store's lobby, which is connected by a back door to an installation area. Also connected to the lobby and installation area is a storage room filled with inventory. While seated in the lobby, Kimberly saw defendant drive up to the store, park and enter through the front door.[3] At about the same time she also saw Rimmer drive up in a Ford Probe and park near the back. Meanwhile, defendant talked to Kimberly's daughter very briefly and then left the lobby through the back door. She did not see defendant again.
Shortly after defendant left, Rimmer entered the lobby from the same back door. He told Kimberly that her boyfriend, who was in the installation area, wanted to speak with her.[4] When Kimberly entered the installation area she saw the other two customers and the two employees lying on the floor with their hands bound behind their backs. She sat down on the floor and watched Rimmer and another male move boxes of inventory from the storage room into Rimmer's Ford Probe. The man assisting Rimmer, she said, was another person and not defendant.[5] She described this person as a 5'7", stocky, black man wearing denim shorts and a baseball hat. He was holding a roll of duct tape. She testified that she did not see defendant Parker at any time during the robbery. She had a good view of the events at hand, but there were times when she was not looking at the perpetrators because Rimmer had ordered her not to look. After Rimmer and the other male finished loading the Ford Probe with the stolen goods, Rimmer shot and killed the two *1102 store employees. He then left the store, driving the Ford Probe.[6]
Another customer, named Louis, testified that he was unable to identify the other male because he never saw him. As soon as Rimmer ordered him to lie on the floor face down, he complied and did not see any of the events that happened thereafter. From listening to the sounds of footsteps on the concrete, Louis was not sure how many people besides Rimmer were involved in the robbery.
Still another customer, named Joe, briefly saw another male in the installation area with Rimmer but did not see his face. He could state only that he saw a heavy set, black male besides Rimmer. He, too, was lying face down on the floor during the robbery. During a line-up in which defendant participated, Joe identified someone other than defendant as the accomplice.
Five days after the robbery, Rimmer rented a storage unit and, assisted by an unidentified male, stored the stolen merchandise therein. Three days later, police arrested Rimmer. At about that time, Rimmer called Jenette and told her to tell "the people that I'm okay." Rimmer had not asked to speak to defendant.
Twelve days after the robbery, the police entered the storage unit and dusted the boxes of stolen goods for latent prints. Prints lifted from six of the boxes belonged to defendant.[7] The fingerprint analyst testified that she did not know when any of the latent prints were actually placed on the boxes. None of defendant's fingerprints were found at the Audio Logic store.
During the charge conference, defendant requested a special jury instruction stating that "mere knowledge that an offense is being committed is not the same as participation with criminal intent, and mere presence at the scene is insufficient to establish participation in the offense." The trial court denied defendant's request. Instead, the court gave the standard jury instruction for the law of "principals":
"If the defendant helped another person or persons commit a crime, the defendant is a principal and must be treated as if he had done all the things the other person or persons did if:
(1) the defendant had a conscious intent the criminal act be done, and (2) the defendant did some act or said some word which was intended to and which did incite, cause, encourage, assist or advise the other person or persons to actually commit the crime. To be a principal, the defendant does not have to be present when the crime is committed."
See also § 777.011, Fla. Stat. (1999).[8] The jury convicted defendant of the crimes charged.
The tenuity of the evidence supporting the verdicts is troubling. All that we really have is the testimony of a witness placing defendant at the scene moments before or during the inception of the incident, coupled with the 12 days later discovery of some of the stolen property with his fingerprints on it. The interval was long *1103 enough that his behavior involved merely disposing of property stolen by someone else.
Kimberly described defendant's brief appearance at the store in exculpatory terms, saying that he was not nervous or involved in any surreptitious activity. She recounted how he had engaged in conversation with her young daughter. No one suggests that defendant was on the premises when the robbery and murders took place; indeed the state's evidence fairly shows that he was well gone when the killings actually happened. The testimony of the eyewitnesses is that the actual perpetrators were two other men. None of defendant's fingerprints were found at the scene.
Even though prima facie, evidence may be so tenuous as to raise concerns for due process. See In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (reasonable doubt standard of criminal law has constitutional stature; due process protects accused against conviction except upon proof beyond reasonable doubt of every fact necessary to constitute crime charged); see also Jackson v. Virginia, 443 U.S. 307, 318, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (after Winship critical inquiry regarding sufficiency of evidence to support conviction is not simply whether jury was properly instructed but also whether record evidence could reasonably support finding of guilt beyond reasonable doubt). The facts supporting the verdict in this case are just as susceptible to an inference of lack of participation in any crime as they are of guilt, thereby calling into question whether the state's case has actually challenged the presumption of innocence. When all the evidence is equally consistent with the absence of guilt, one's trust that the result is reliable is severely weakened. The convictions here teeter on the very edge of constitutional deficiency.
Considerably enhancing my doubts in the reliability of the verdict is the refusal of the trial judge to give the special instruction requested by defendant. Clearly the special instruction would have been a correct statement of the law. See Staten v. State, 519 So.2d 622 (Fla.1988); Collins v. State, 438 So.2d 1036, 1038 (Fla. 2d DCA 1983). I acknowledge that the standard jury instruction derived from the principals statute also correctly states the law. See Hooper v. State, 703 So.2d 1143, 1148-49 (Fla. 4th DCA 1997) (Farmer, J., concurring).
The state's theory of guilt was that defendant aided the robbery by acting as a look-out. But theories are not proof. They must be supported by evidence. His brief presence on the scene before or at the beginning of the crime and his later fingerprints on stolen goods do not prove that defendant's conduct was that of a look-out. Any conclusion from this evidence that he was a look-out would be antithetic to Staten because the state's case here lacks the "something more" that the Staten court stressed. 519 So.2d at 624. In that case, for example, there was direct testimony that defendant was present on numerous occasions when the proposed robbery was planned; that he was involved in further discussion of the planned crime as the group, including defendant, drove to the scene to execute the plan; and that he waited in a car across the street while the robbery and murder took place and then drove the getaway car. These facts added sufficient evidence of participation to sustain the conviction in Staten.
There is no comparable proof in the present case. The fact that his fingerprints were found on stolen property discovered 12 days later is not unequivocal evidence of participation in the robbery and murder. Precisely when the stolen *1104 property was actually handled by defendant is not satisfied by the presence of his fingerprints on it, as the state's expert conceded in her testimony. In legal effect, the presence of fingerprints is unlike the fact of actual possession of recently stolen property, which does allow an inference of participation in the theft. Handling an item is not necessarily an assertion of dominion and control over it. The fact that one's prints are found on stolen property 12 days after the robbery thus offers only the slightest suggestion that one may have been a participant in the theft of it.
Where the evidence of participation in the crime is such that due process concerns reasonably arise, then a further instruction of the kind proposed here can become necessary. This additional instruction is needed to insure that any guilty verdict is founded on actual participation in the crime and not on circumstances in which one may simply be caught up in eventsas in merely being present at the scene or knowing that a crime in which one is not involved is being committed by someone else. In other words when the entire evidence is wholly circumstantial and capable of being understood both for and against the defendant, the jury may have to be cautioned that proof of mere presence and mere knowledge of a crime is not enough. I conclude that is the case here, for the state's evidence is both circumstantial and equivocal.
As I said, from a constitutional, due process, standard of proof beyond a reasonable doubt, the fingerprint evidence supplies only tenuous proof of actual participation. The obvious vulnerability of the state's case, it seems to me, required additional instructional safeguard to insure that the jury would not convict merely because he was there briefly before the robbery was carried out and later may have only handled the stolen merchandise. I would therefore reverse for a new trial.
NOTES
[1] Appellant was convicted of two counts of first degree murder, three counts of armed robbery, four counts of armed kidnapping, one count of attempted armed robbery, and one count of aggravated assault.
[2] Two customers identified Rimmer as the shooter and robber, and the jury found Rimmer guilty of all counts. Rimmer was sentenced to the death penalty and is thus not a party to this appeal.
[3] The police department asked Kimberly to look at a photographic line-up and identify the person who drove the Kia to the store. Kimberly picked defendant's photograph. Kimberly also identified defendant in court as the man driving the Kia.
[4] How Rimmer knew Kimberly was in the lobby is not indicated in the record.
[5] The police never apprehended this third person.
[6] The State never asked the customers if they heard more than one car drive away. The State also did not ask Kimberly how the unknown assailant left or if he left in the Ford Probe also.
[7] The store owner testified that the police did not recover all of the merchandise that was stolen.
[8] "Whoever ... aids, abets, counsels, hires, or otherwise procures [an] offense to be committed, and such offense is committed or is attempted to be committed, is a principal in the first degree and may be charged, convicted, and punished as such, whether he or she is or is not actually or constructively present at the commission of such offense."