STRINGER, Judge.
Robert Leonard appeals from the denial of his motion for postconvietion relief filed pursuant to Florida Rule of Criminal Procedure 3.850. Leonard raises six grounds for relief, but we find merit in only one. Because Leonard’s claim that his trial counsel was ineffective for failing to have a necklace examined by an expert was facially sufficient, we reverse and remand for an evidentiary hearing on this single issue.
Leonard was charged with one count of burglary of a dwelling with assault or battery, two counts of sexual battery, one count of kidnapping, and one count of battery on a person over sixty-five for offenses which were alleged to have occurred on July 22, 1995. All of the charges arose from an incident in which an assailant broke into the victim’s condominium, ransacked the condominium, raped the victim twice, battered her, tied her up, and left with stolen jewelry. During the assailant’s prolonged stay 'with the victim, the assailant touched numerous items and surfaces in her condominium. The assailant also ate a single candy bar from a wrapped package of six that was in the victim’s refrigerator.
On the morning after the incident, the victim gave a statement to the police in which she gave a detailed description of her assailant. The victim also worked with a sketch artist to create a composite drawing of her assailant. In her statement, the victim told the police that she had had ample time to look at her assailant and that she was confident in her description. A neighbor of the victim told the police that he had seen someone in the hallway outside of the victim’s condominium shortly before the burglary. This neighbor also worked with a police sketch artist, and they too created a composite drawing of the person seen in the hallway. This composite drawing looked very similar to the one created by the victim.
At the victim’s condominium, the police collected numerous fingerprints from various surfaces, including a single fingerprint from the bottom of the package of candy bars in the victim’s refrigerator. They recovered a cigarette butt from the toilet. They also collected a stainless steel flashlight that the victim said did not belong to her and that had not been in her condominium before the assailant broke in. A palm print was recovered from the flashlight. In addition, the police collected several hairs from the victim’s bedding.
Despite this evidence and the composite drawing, the police were not able to identify any suspects for several months. Ultimately, the police arrested Leonard after he pawned a gold rope necklace that was similar to one taken from the victim. The pawned necklace, however, had several significant differences from the one taken from the victim. According to the victim, her rope necklace was 14-karat gold, but it had a strand of white gold woven through it. When the necklace was taken, it was in good condition. The pawned necklace was a 14-karat gold rope necklace, but it did not have the white gold strand woven through it. In addition, it was missing its clasp.
When he was arrested, Leonard looked nothing like the composite drawings prepared by the victim and her neighbor. The police subsequently showed the victim a photo-pack containing six photos, including Leonard’s. The victim failed to identify Leonard as her assailant. The police *751 also showed the photo-pack to the victim’s neighbor, and he too failed to identify Leonard as the person he had seen outside the victim’s condominium. The palm print lifted from the flashlight did not match Leonard’s palm print. Of all of the fingerprints lifted from all of the surfaces in the victim’s condominium, only one matched Leonard, and that was the single fingerprint from the bottom of the package of candy bars. Analysis of the hairs collected from the victim’s condominium resulted in a finding that while the hairs were “consistent” with Leonard’s, they could not be definitively matched to Leonard.
At trial, Leonard’s defense was one of misidentification. The only evidence the State had connecting Leonard to the crime was the single fingerprint from the package of candy bars and the necklace. Leonard’s defense counsel presented testimony to establish that Leonard and his girlfriend shopped at the same grocery store as the victim. He also presented testimony that Leonard would sometimes pick up candy bar packages for his girlfriend’s children, but that she would sometimes make him put them back.
On the issue of the necklace, the State admitted that the pawed necklace did not match the necklace stolen from the victim. However, the State theorized that Leonard had removed the clasp from the necklace and had “unwoven” the white gold strand from it in an effort to disguise the necklace. In response, Leonard presented the testimony of his long-time girlfriend, who told the jury that Leonard had owed the rope necklace he had pawed for several years. The jury subsequently found Leonard guilty as charged, and this court affirmed his convictions and sentences. Leonard v. State, 731 So.2d 712 (Fla. 2d DCA 1999).
In his motion for postconviction relief, Leonard contended, among other things, that his counsel was ineffective for “failing] to obtain an expert to microscopically examine the necklace pawed by [Leonard].” Leonard asserted that, given the dearth of evidence against him, counsel should have fully investigated every available avenue to attack the limited physical evidence. Leonard alleged that had counsel retained such an expert, the expert would have determined that the necklace Leonard pawed could not have been altered as argued by the State, thus eliminating that piece of evidence from the jury’s consideration. Leonard also asserted that had such an expert testified, the outcome of the trial would have been different.
In summarily denying Leonard relief on this issue, the trial court noted that Leonard had presented the testimony of his girlfriend at trial and that she testified that Leonard had owed the pawed necklace for several years before his arrest. The trial court then stated that Leonard’s allegations were insufficient to state a claim for postconviction relief because Leonard “fail[ed] to indicate that an expert’s opinion would have contradicted the testimony of his ow witness.”
It is apparent from the trial court’s order summarily denying relief that the trial court misconstrued Leonard’s claim. Leonard does not deny that he was able to present some evidence to support his theory of defense. However, the testimony of Leonard’s girlfriend that he had owed a 14-karat gold rope necklace for several years would likely have been greeted with some skepticism by the jury given the long-term relationship between Leonard and his girlfriend. Further, the fact that Leonard was able to introduce some evidence in support of his theory of defense does not negate his claim that his trial counsel was ineffective for failing to seek *752 expert testimony that would have conclusively rebutted the State’s theory.
In order to state a facially sufficient claim for postconviction relief, a defendant must allege that his trial counsel’s performance was deficient and that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Leonard’s motion sufficiently alleges these two elements, and his claims are not conclusively rebutted by any of the attachments to the trial court’s order summarily denying relief. See Fla. R.Crim. P. 3.850(d) (allowing trial court to summarily deny relief “[i]f the motion, files, and records in the case conclusively show that the movant is entitled to no relief’). Because this claim is facially sufficient and is not rebutted by the record attachments, Leonard is entitled to an evidentiary hearing on this issue.
We caution that our opinion does not require defense counsel to retain experts in every case to examine every piece of physical evidence. However, when the State’s evidence against a defendant is as slim as it was in this case, defense counsel has an obligation to consider every possible avenue for discrediting that evidence. It may be that counsel did so in this case; however, we have no way to making that determination without an evidentiary hearing. See Flores v. State, 662 So.2d 1350, 1351 (Fla. 2d DCA 1995) (noting that it is difficult without the benefit of an eviden-tiary hearing to determine whether or why defense counsel would have failed to explore a particular defense). Accordingly, we remand for an evidentiary hearing on this single issue.
Affirmed in part; reversed in part, and remanded for further proceedings.
CASANUEVA, J., Concurs specially.
DANAHY, PAUL W., Senior Judge, Concurs.