LaROSE, Judge.
Raidel Cordero-Artigas appeals his convictions and sentences for manufacture of a controlled substance and possession of drug paraphernalia. See §§ 893.18(l)(a)(2), .147(1), Fla. Stat. (2007). He argues that the trial court should have granted his motion for judgment of acquittal because the State’s evidence was insufficient to convict him. We agree and reverse.
The Sarasota County Sheriffs Office Narcotics Bureau suspected that a newly built North Port residence was a marijuana grow house. Detective Torres conducted surveillance on the house for two months. During that time, he observed but four individuals at the property. One was Mr. Cordero. Detective Torres first saw him on December 13, 2007, in the garage. Two white pickup trucks were parked outside. He did not see Mr. Cordero go inside the house. Later, Mr. Cordero and his cousin, Alfredo Lazo, left in one of the trucks. Detective Torres learned that the other truck belonged to Antonio Herrero. Detective Torres acknowledged that marijuana plants most likely were not on the property that day.
On December 15, Detective Torres saw one white pickup truck at the house. He next saw a white Ford Crown Victoria at the house on January 2, 2008. It was in the driveway backed up close to the garage. Detective Torres saw construction supplies in the garage. Several hours later, Mr. Herrero came out of the house and drove away in the Crown Victoria.
On January 16, Detective Torres observed that a new fence had been installed. On January 17, another detective, Detective Eastwood, reported what he believed was air conditioner noise. On January 18, Detective Torres saw both Mr. Herrero’s white truck and Crown Victoria in the driveway.
Detective Torres saw Mr. Cordero for a second time on February 8, 2008. Mr. Cordero drove a Mustang and parked on the street in front of the house. He did not go into the house; he only picked up Mr. Herrero and Mr. Herrero’s wife, Magnolia Cabrera, and drove away. Detective Torres followed the Mustang onto 1-75 southbound and radioed Florida Highway Patrol to stop the vehicle. A trooper stopped them for speeding. The trooper also conducted a consensual search of Ms. Cabrera’s handbag; he found no contraband.
On February 20, 2008, Detective Torres obtained and executed a search warrant for the house. He found marijuana plants and a host of growing paraphernalia. Two sheets of paper taped to a wall in the south grow room contained instructions for fertilizing marijuana. A right thumb print and a left index finger print on the back of one page and the front of the other page matched Mr. Cordero’s prints. Mr. Lazo’s fingerprints were on an air conditioner in that room. A fingerprint expert testified at trial that she reviewed ninety fingerprints from the grow house. Of the ninety prints found in the grow house, only the two on the instructions matched Mr. Cordero’s prints.
Arrest warrants issued for Mr. Herrero, Ms. Cabrera, Mr. Lazo, and Mr. Cordero. Mr. Herrero and Ms. Cabrera were never found. After his arrest, Mr. Cordero offered to assist in the investigation. He told detectives that he knew from a comment Ms. Cabrera made at the traffic stop that she and Mr. Herrero were operating a grow house. Mr. Lazo was arrested, but the charges against him were dropped. He was listed as a defense witness for Mr. Cordero, but he did not appear at trial.
The trial court denied Mr. Cordero’s motion for a judgment of acquittal, and the *841 jury convicted him as charged. The trial court denied his renewed motion for judgment of acquittal notwithstanding the verdict. The State takes the position that Mr. Cordero’s presence at the house on two occasions, his fingerprints on the instructions, and his knowledge of the grow operation were sufficient to defeat the motion.
Testifying on his own behalf, Mr. Corde-ro explained the two fingerprints. He claimed that Mr. Herrero asked Mr. Lazo to pick up two air conditioners at Mr. Herrero’s house in Miami and bring them to the house in North Port. Mr. Cordero helped his cousin. As they loaded the air conditioners into Mr. Lazo’s truck, Mr. Cordero noticed some papers on top of the box holding one of the air conditioners. He thought they might be warranty documents. He put the papers into the box without reading them. He and Mr. Lazo delivered the air conditioners to the garage of the North Port house. Ms. Cabrera invited them in for lunch. They ate in the kitchen and did not go into the main part of house. Mr. Cordero did not see any marijuana.
Mr. Cordero testified that he was at the house only twice — the two times detectives surveilling the house saw him there. Once was to deliver the air conditioners. Detective Torres testified that Mr. Cordero left through the garage door. The second time was to pick up Mr. Herrero and Ms. Cabrera to drive them to Miami. Detective Torres confirmed that Mr. Cordero picked them up outside. Soon after he picked them up, he was stopped for speeding. After the trooper left, Ms. Cabrera told Mr. Cordero that she was nervous because she and Mr. Herrero were growing marijuana in the house. Mr. Cordero testified that this was the first he knew about it.

Analysis

Circumstantial evidence, including presence at the crime scene and fingerprints, is an “‘incriminating circumstance[ ] which the jury may consider as tending to show guilt if evidence thereof is allowed to go to the jury unexplained or unrebutted by evidence of exculpatory facts and circumstances.’ ” Walker v. State, 896 So.2d 712, 717 (Fla.2005) (quoting State v. Young, 217 So.2d 567, 571 (Fla.1968)). “ ‘A motion for judgment of acquittal should be granted in a circumstantial evidence case if the [S]tate fails to present evidence from which the jury can exclude every reasonable hypothesis except that of guilt.... [I]f the [S]tate does not offer evidence which is inconsistent with the defendant’s hypothesis, ... [t]he [S]tate’s evidence would be as a matter of law “insufficient to warrant a conviction.” Fla. R.Crim. P. 3.380.’ ” Darling v. State, 808 So.2d 145, 155-56 (Fla.2002) (quoting State v. Law, 559 So.2d 187, 188-89 (Fla.1989)). “ ‘It is not sufficient that the facts create a strong probability of, and be consistent with, guilt. They must be inconsistent with innocence.’ ” Lindsey v. State, 14 So.3d 211, 215 (Fla.2009) (quoting Frank v. State, 121 Fla. 53, 163 So. 223, 223 (1935)).
“It is the actual exclusion of the hypothesis of innocence which clothes circumstantial evidence with the force of proof sufficient to convict.” Id. (quoting Ballard v. State, 923 So.2d 475, 482 (Fla.2006)). If the State introduces competent evidence that conflicts with the defendant’s theory of events, “it becomes the jury’s duty to determine whether the evidence is sufficient to exclude every reasonable hypothesis of innocence beyond reasonable doubt.” State v. Law, 559 So.2d 187, 189 (Fla.1989); see, e.g., Norton v. State, 709 So.2d 87, 91 (Fla.1997) (holding conflict between defendant’s claim that he was at home asleep at time of murder with testimony of eyewitness that he saw defendant with victim near time of murder sufficient to avoid judgment of acquittal); Burkell v. State, 992 So.2d 848, 852 (Fla. 4th DCA *842 2008) (holding conflict between defendant’s claim that he was wearing sandals when he found body of victim who rented room in his house and evidence of defendant’s bloody bare footprints at scene sufficient to avoid judgment of acquittal).
But circumstantial evidence is insufficient to convict if the State’s evidence does not conflict with the defendant’s reasonable theory of events. For example, Jaramillo v. State, 417 So.2d 257 (Fla.1982), held that the defendant’s fingerprints found on a knife in the residence where a shooting occurred were legally insufficient to convict him of the shooting. The State failed to present evidence that was inconsistent with Mr. Jaramillo’s reasonable explanation that he helped the victim’s nephew cut boxes the previous day using the nephew’s knife. Id. at 258. Similarly, in Hill v. State, 973 So.2d 655, 655-56 (Fla. 2d DCA 2008), we held that the State’s only evidence against the defendant, his fingerprints found on a piece of broken window glass outside the burglary scene, was insufficient to convict him because the State presented no evidence that the fingerprints could have been made only at the time of the crime.
Leonard v. State, 731 So.2d 712 (Fla. 2d DCA 1999), also is instructive. Law enforcement found Mr. Leonard’s thumb print on the bottom of a box of candy bars in the victim’s refrigerator. Id. at 719. His girlfriend testified that she and he shopped at the same grocery store the victim used, that he often bought boxes of candy bars for her children, and that he sometimes returned a box to the shelf if they did not have enough money to buy it. Id.
Mr. Leonard appealed his conviction, arguing, like Mr. Cordero, that the trial court erred in denying his motion for a judgment of acquittal because the evidence was not inconsistent with his version of events. Id. at 716 (citing Long v. State, 689 So.2d 1055, 1057 (Fla.1997) (stating that in circumstantial evidence case, State must produce evidence inconsistent with any reasonable hypothesis of innocence)). We noted that, “unlike Jaramillo, in addition to the fingerprint there was a necklace that Leonard pawned three weeks after the crime.” Id. at 718. It matched the description of a gold necklace with a white gold strand stolen in the burglary. Id. at 714. A jury could and did find that the necklace Mr. Leonard pawned was the one stolen; this conflicted with his theory of innocence by linking him to the crime with no reasonable explanation as to how he obtained it. Id. at 719. We affirmed Mr. Leonard’s conviction, holding that “the trial court could have determined that Leonard’s theory of events that his fingerprints could have been placed on the bottom of the same box of candy at the same supermarket where the victim subsequently purchased the candy box was so remote that it was inconsistent with the State’s evidence.” Id. at 719.
In contrast, Mr. Cordero’s reasonable explanation that the papers were on top of the air conditioner box and that he slipped them into the box without reading them explains the presence of his fingerprints without knowledge of the crime. The State introduced no conflicting evidence to suggest Mr. Cordero’s involvement in the grow house operation. Mr. Cordero’s explanation, unlike that in Leonard, is not so remote as to render it inconsistent with the State’s evidence. Therefore, on the record before us, we must reverse.
Reversed.
CASANUEVA and MORRIS, JJ., Concur.