## EQUITABLE LIFE ASSUR. SOC. OF THE UNITED STATES v. DUNN.

### No. 4806.

Circuit Court of Appeals, Third Circuit.

Sept. 23, 1932.

Rehearing Denied Oct. 31, 1932.

Benjamin J. Jarrett, Karl W. Warmcastle, and McCook & Jarrett, all of Pittsburgh, Pa., for appellant.

James J. Burns, Jr., of Pittsburgh, Pa., for appellee.

Before WOOLLEY and DAVIS, Circuit Judges, and FAKE, District Judge.

DAVIS, Circuit Judge.

This is an appeal from a judgment of the District Court for $5,000, with interest, against the Equitable Life Assurance Society on a policy of insurance issued on the life of Clyde A. Dunn. The company refused to pay the policy on the ground that the insured had knowingly and willfully made material, false, and untrue answers in his application for insurance and for the reinstatement of the policy.

On October 3, 1927, the insured, in an application for insurance, told the medical examiner for the company that he had never been treated for any disturbance of the heart or blood vessels; that he had never raised or spat blood; and that he had not during the past five years consulted or been treated by any physician except Dr. Thomas Sheppard of Pittsburgh in July, 1927, for "acute bronchitis, two weeks duration. Result. Good."

The policy provided that all statements by the insured, in the absence of fraud, should be treated as representations and not warranties.

On April 7, 1928, the policy lapsed for nonpayment of the premium. It was reinstated on July 11, 1928, by the payment of the premium due and the delivery by the insured of a statement signed by him and dated July 7, 1928, that at that time he was in good health and had not consulted any physician since the issuance of the policy on October 7, 1927.

The defendant company says that all of these representations by the insured were material, false, and undisputed and so the court erred in refusing binding instructions.

Whether or not binding instructions should have been given is the real question before us.

Dr. Sheppard testified that he treated the insured for chronic valvular heart disease, mitral stenosis, from April 1, 1926, to October 3, 1927; that he saw him thirty-five times during that period, nine times at the insured's home and the other times at the doctor's office; and that he told him and also Mrs. Dunn many times that he had heart disease, advised him that he had mitral stenosis; that during this period the insured "got progressively worse"; that at times he had his patient in bed, "one, two or three days in bed, depending on how he felt."

The appellee attempted to rebut the truth of Dr. Sheppard's testimony. That is, she tried to show that the insured did not have chronic valvular heart disease as Dr. Sheppard said he readily discovered at the first examination he made of Mr. Dunn. This she did, by the testimony of other physicians and by showing the kind of work that the insured regularly performed, thus seeking to have the inference drawn that, if he were in the condition in which Dr. Sheppard said he was, he could not have done the work which he admittedly did.

Dr. Frederick S. Kellogg was the physician who examined the insured for the company. He testified that he spends four hours a day in the office of the insurance company; that he made a thorough examination of the insured's heart, did not find any heart disease, and so reported to the company which issued a policy on his life.

Dr. J. W. Blair, a practicing physician in Latrobe, where the insured lived, except for a short time when he lived in Pittsburgh, testified that he knew Mr. Dunn all his life, saw him frequently, attended his son, who had scarlet fever, every day for a week or ten days, was not asked to prescribe for Mr. Dunn, at times saw him almost every day working, treated him professionally on July 12, 19, and 20, 1928, for grippe, influenza or affection of the bronchial tubes; that he examines many applicants for life insurance companies; that he examined the heart of Mr. Dunn at this time; that he did not have heart disease, and, if he had had it, he would have discovered it.

Mrs. Marie Dunn, insured's widow, testified that her husband was ill with a cold in April, 1926, and did not work for three or four days; that he was off again some time in 1927 a day or two, and that except during these times he worked regularly, doing such work as loading and unloading trucks, carrying cases of soda and root beer from place to place, at his place of business, putting up a barbecue stand, baking hams, and selling gasoline, soft drinks, candies, sandwiches, etc.; that he never complained of any ill-

ness, and that from April, 1926, to the time that he went to St. Francis Hospital in Pittsburgh on August 9, 1928, where he died on the 15th of that month, she never knew that he had any kind of illness except colds; that Dr. Sheppard never told her nor stated in her presence that her husband had heart disease.

In 1928, the insured ran a gasoline station and barbecue stand and there was a great deal of testimony to the effect that he did everything that was to be done in and about such a place; that he appeared to be well and never complained of having any ailment whatever; that before he took over the gasoline and barbecue stand, he worked for the Hires Root Beer Company and that he drove trucks and did everything that was to be done in and about its place of business.

Dr. W. H. Ingram, head of the Department of Pathology in the Medical College of Pittsburgh, who was the first to organize pathological laboratories in five hospitals in Pittsburgh, a heart specialist, testified that it would have been absolutely impossible for the insured to have done the work which it was indisputably testified he did, if he had had mitral stenosis on April 1, 1926, so that he spat blood.

Whether or not the insured knew that he had heart disease on July 7, 1927, and whether or not he knew that he was not in good health on July 7, 1928, when he signed a statement for the reinstatement of the policy, are questions of fact that, under the above evidence, the learned trial judge could not as a matter of law decide as it would have been necessary for him to do in order to give binding instructions. Whether or not Dr. Sheppard told Mr. and Mrs. Dunn that he had heart disease is also a material fact that the judge as a matter of law could not decide. Dr. Sheppard testified that he did so tell them; that he talked with Mrs. Dunn many times about her husband. But she denied that he ever told her that her husband had heart trouble and testified that he was under Dr. Sheppard's treatment only twice to her knowledge, in April, 1926, for three or four days and once in 1927. Of course, she could not say what he told her husband in her absence. But when Dr. Sheppard is flatly contradicted as to whether or not the insured had heart disease and as to whether or not he told Mrs. Dunn that he did, it raises such a doubt as to whether or not Mr. Dunn was told or knew that he had heart disease that the judge could not, as a matter of law, determine it and take the case away from the jury. There was a sharp

controversy over the facts in the case, as the testimony of the witnesses already mentioned, and others not mentioned, indicates. If the insured knew that he had heart disease, he perpetrated a fraud upon the company, but fraud is never presumed. The burden was on the defendant to show "by clear, cogent, convincing and certain proof" that the answers made by the insured were false. Northwestern Mutual Life Insurance Co. v. Wiggins (C. C. A.) 15 F.(2d) 646; Wharton v. Ætna Life Insurance Co. (C. C. A.) 48 F.(2d) 37; Holleran v. Life Assurance Co., 18 Pa. Super. Ct. 573; Livingood v. New York Life Insurance Co., 287 Pa. 128, 134 A. 474. This we think it did not do. The question was submitted to the jury under proper instructions and its verdict settles the fact.

Upon a review of all the assignments, we do not think that the learned District Judge committed error in not giving binding instructions and the judgment is affirmed.