PETER FRANK v. STATE.

163 So. 223.
Division B.
Opinion Filed September 30, 1935.

*Zewadski & Pierce,* for Plaintiff in Error;

*Cary D. Landis,* Attorney General, and *Roy Campbell,* Assistant, for the State.

TERRELL, J.—Peter Frank and Charles E. Emmons were indicted and tried for murder in the first degree. Motion for severance was denied, they were tried jointly, Lemmons being acquitted and Frank convicted, as charged in the indictment, with recommendation for mercy. From a judgment and sentence to life imprisonment in the state penitentiary he seeks to be relieved by writ of error. Twelve errors are assigned and argued at length.

The first, third, fourth, and fifth assignments of error challenge the sufficiency of the evidence to sustain the verdict and judgment.

The evidence was entirely circumstantial and under the law, Section 5035, Revised General Statutes of 1920, Section 7137 Compiled General Laws of 1927, the burden was on the State to prove that Peter Frank did, on or about the date charged in the indictment, unlawfully, with a premeditated design, kill Jerry Bacalis in Hillsborough County.

When the State relies on circumstantial evidence the circumstances, when taken together, must be of a conclu-

sive nature and tendency, leading on the whole to a reasonable and moral certainty that the accused and no one else committed the offense charged. It is not sufficient that the facts create a strong probability of and are consistent with guilt. They must be inconsistent with innocence. Hall v. State, 90 Fla. 719, 107 So. 246; Cannon v. State, 91 Fla. 214, 107 So. 360; Whetston v. State, 31 Fla. 240, 12 So. 661; Kennedy v. State, 31 Fla. 428, 12 So. 858; Gantling v. State, 40 Fla. 237, 23 So. 857; Jenkins v. State, 35 Fla. 737, 18 So. 182; Pate v. State, 72 Fla. 97, 72 So. 517; 1 Wharton's Criminal Evidence (3rd Ed.) 22; Underhill's Criminal Evidence (3rd Ed.) 16.

The value of circumstantial evidence and its effect as proof depend upon the conclusive nature and tendency of the circumstances relied upon to establish the controverted fact. If any fact essential to a conviction is not legally established to a moral certainty, the evidence is inconclusive and cannot be said to be sufficient in law to satisfy the mind and conscience of a jury. Lee v. State, 96 Fla. 59, 117 So. 699, and cases there cited. Where the record discloses no circumstantial evidence which would constitute the basis for a verdict of guilty, a judgment based on such verdict will be reversed. Bloodgood v. State, 94 Fla. 639, 114 So. 528.

When the evidence entirely fails to connect a convicted party with the crime of which he was convicted the judgment of conviction should be reversed. Stewart v. State, 58 Fla. 97, 50 So. 642. Essential elements of the crime cannot be left to inference or conjecture. The accused is presumed to be innocent and every essential element of the crime must be proven as alleged. Carnley v. State, 82 Fla. 282, 89 So. 808. There are no presumptions against the defendant. Every essential element of the crime charged

must be established against the accused beyond a reasonable doubt before a conviction is warranted. Sykes v. State, 78 Fla. 167, 82 So. 778.

Circumstantial evidence is always insufficient, where, assuming all to be proved which the evidence is to prove, some other hypothesis may still be true, for it is the actual exclusion of every other hypothesis which invests mere circumstances with the force of proof. Whetston v. State, 31 Fla. 240, 12 So. 661; Florida East Coast R. R. Co. v. Acheson, 102 Fla. 15, 135 So. 551.

With these general rules with reference to the degree and certainty of proof required in a case where circumstantial evidence is relied on to convict let us briefly examine the evidence in this case. It discloses that the deceased and the plaintiff in error had been in business together, that they had had some previous difficulty, that Frank had had an affair with the wife of Bacalis which was without credit to either of them, that Frank had been expelled from a Greek society to which he and Bacalis belonged, but some or all these difficulties had been smoothed out, apparently to the satisfaction of both though this is questioned. Frank had sold his interest in the business to Bacalis and was trying to get located in business again. Two pistols were found in the house where Bacalis' was killed, one on the kitchen floor with one cartridge exploded, and the other over the kitchen sink fully loaded. It was testified that the pistol on the floor at one time belonged to the deceased but disappeared about two years ago when plaintiff in error was frequenting the place, the telephone wires were disconnected in the house, and sometime previous Frank had made violent threats against Bacalis.

Bacalis was killed while asleep in his own house in the early morning. Two other persons were in the house at

the time, one of whom was sleeping in bed with him. Neither of these parties could tell anything about the shooting of Bacalis though he was shot through the head. The house was locked from the inside and no incriminating finger prints or footprints were ever found about the place. Frank lived several blocks from Bacalis and it was testified by members of his family that he was sleeping in his own home at the time of the killing.

The State lays the motive for the homicide to the fact that about two months before it took place Bacalis had filed suit for divorce against his wife, charging her with adultery with Peter Frank. At the time the suit for divorce was brought Bacalis also instituted a common law action against Peter Frank for $50,000.00 for alienation of affections. It is further alleged that Bacalis had several thousand dollars in life insurance in which his wife was named beneficiary. In addition to the insurance he had other valuable property she would inherit in case of his death. The whole affair is a superlatively mysterious one and when pondered through leaves one with nothing stronger than a suspicion that Frank may have committed the deed.

As a whole the evidence is far from that degree of certitude required by the rule stated in the forepart of this opinion. It is not conclusive nor does it convince one to a moral certainty that Frank was guilty of the charge against him. The facts are not all consistent with guilt nor are they inconsistent with innocence. In fact when considered in their most favorable aspect they fail to close the avenue to other hypotheses as to how Bacalis came to his death.

There is not a shred of evidence that connects Frank with the scene of the crime at any time near the time of its commission. On this point it could have as appropriately been charged to any other man in the community. The

threats Frank was alleged to have made against Bacalis were made weeks before the crime was committed and it is not shown that any effort was made at any time to put them in effect. The business and domestic troubles between Frank and the deceased had apparently been composed and the inheritance theory of the State as a basis for motive has no support except suspicion. The amount of the inheritance and the status of the parties reduces that suspicion to a shadowy one. It would be contrary to well settled canons for interpreting circumstantial evidence to let the conviction of plaintiff in error stand.

There are other assignments which constitute reversible error but a discussion of them would serve no useful purpose since the judgment must be reversed because of the insufficiency of the evidence.

The judgment below is accordingly reversed and a new trial awarded.

Reversed.

WHITFIELD, C. J., and BROWN, BUFORD and DAVIS, J. J., concur.