## NEW YORK LIFE INS. CO. v. BACALIS.
### No. 8465.

Circuit Court of Appeals, Fifth Circuit.
Jan. 27, 1938.

R. W. Shackleford, of Tampa, Fla., for appellant.

C. Edmund Worth and W. J. Bivens, both of Tampa, Fla., for appellee.

Before FOSTER, SIBLEY, and HOLMES, Circuit Judges.

SIBLEY, Circuit Judge.

James Bacalis, as beneficiary of an insurance policy on the life of his brother Jerry, got a verdict by direction of the court, and the Insurance Company appeal-

ing contends that the evidence required submission to the jury of the issues made by special pleas in substance that the insured, who was murdered September 3, 1934, was on August 10, 1934, when he applied for the insurance, and on August 24th, when the policy was delivered, in personal difficulty with one Peter Frank, and believed he was in danger of being murdered by Frank, and was carrying a pistol to protect himself, which were circumstances material to the risk unknown to the company and which Bacalis was bound to disclose.

The evidence showed that Jerry Bacalis had previously carried several policies of insurance with the company which had lapsed for nonpayment of premiums. In 1934, he appears to have had a home, and a good business in which Frank and Frank's brother-in-law Charlie Peters were partners. In May, 1934, Bacalis intercepted a letter from his wife to Frank which led to a discovery of adultery between them. On July 17th, Bacalis filed a suit for divorce against his wife on that ground, and a suit against Frank for $50,000 for alienation of his wife's affections., Friends arranged a settlement of the latter suit on July 19th by which Frank was to sell on agreed terms his interest in the business to Bacalis. The preliminary payments were made by Bacalis July 31st, and the suit was dismissed. A Greek society to which all parties belonged expelled Frank, but Bacalis is not shown to have had anything to do with that. Frank was not entirely satisfied with the settlement, but the witnesses would not say that he continued "mad." No proof was made that either Frank or Bacalis had attempted to attack the other, or threatened to do so. Frank had, in speaking of Bacalis, called him a vile name and made an incomplete threat of some sort in case Bacalis should attempt to oust Charlie Peters from the business, but Peters testified that Bacalis had never attempted to do that and he did not expect it; and this was all after the policy had been delivered. There was evidence that the night of the day after the policy was delivered Bacalis asked his young nephew, who slept in an adjoining room, to sleep with him. The following day Bacalis went on a trip and brought back one Lemons, who slept with him five nights afterwards and was sleeping with him on the morning of September 3rd when Bacalis was found in bed shot through the head. Neither Lemons nor Frank testified. Bacalis had a large pistol which he carried on his trips, but was not carrying it more than usual just before his death. He also had gotten a small pistol during the last days belonging apparently to one Doukos. Doukos was produced as a witness by the Insurance Company, but was withdrawn, and the time and circumstances of Bacalis getting that pistol do not well appear. The nephew of Bacalis and two other witnesses mainly relied on by the Insurance Company to prove the pleas did not testify to anything of importance occurring prior to the delivery of the policy. They had, however, previously been questioned and their answers taken by a stenographer. These answers the Insurance Company was allowed to use at first to refresh their recollections, but on failure in that effort they were proven by the stenographer and introduced as an impeachment. The impeaching statements were themselves vague, but could be construed to show fear and caution on the part of Bacalis before the policy was applied for or issued. It was undisputed that Bacalis applied for two policies totalling $10,000, which were issued and tendered to him, but he accepted only one of them. There was no attempt to show who killed Bacalis. Both Lemons and Frank, it is admitted in argument, have been acquitted. Frank v. State, 121 Fla. 53, 163 So. 223.

The pleas do not allege any fraudulent intent or purpose on the part of Bacalis in applying for and accepting the insurance. His refusal to accept all that was offered would go far to disprove such an intent. No questions were asked him in connection with his application touching this matter. The position taken is that the case is like that where one gets fire insurance on his property when to his knowledge, but not that of the insurer, a conflagration which threatens it is already raging; or where one about to fight a duel should in like manner obtain life insurance, as instanced by Judge Taft in Penn Mutual Life Ins. Co. v. Mechanics' Co., 6 Cir., 72 F. 413, 38 L.R.A. 33; and that the risk is simply not that intended to be insured. In reply it is urged that after all relief in such a case depends on the fraud of the insured as causing a mistake on the part of the insurer, and that a fraudulent purpose must be shown as held in the case cited; and that the fraudulent intent is necessary to be averred has been decided in Florida. American Ins. Co. v. Robinson, 120 Fla. 674, 163 So. 17. Many cases are cited by each side on this point, but we will not de-

202

cide it because the pleas were demurred to on this ground and were upheld as written, and that judgment is not up for review by cross-appeal. We find it necessary to review only the ruling of the judge that the evidence did not sufficiently sustain the pleas, for we agree in that opinion.

■ Where against its written policy a life insurance company, particularly after the death of the insured, attempts to show fraud of the insured in procuring it, the rule is well settled that some evidence of fraud is not enough, nor should the jury be instructed to act on the bare preponderance of the evidence, but that the evidence must be clear and satisfactory in character. Suravitz v. Prudential Ins. Co., 261 Pa. 390, 104 A. 754; Northwestern Mutual Life Ins. Co. v. Wiggins, 9 Cir., 15 F.2d 646; Equitable Life Assurance Society v. Dunn, 3 Cir., 61 F.2d 450; New York Life Insurance Co. v. Kwetkauskas, 3 Cir., 63 F.2d 890; Northwestern Mutual Life Ins. Co. v. West, 62 App.D.C. 381, 68 F.2d 428. In the language of this court in Williams v. Penn Mutual Life Ins. Co., 5 Cir., 27 F.2d 1, 3, "Fraud is never presumed, and the burden was on appellant to prove it with reasonable certainty by a preponderance of convincing evidence." Concealment is only a form of fraud, and the same rule applies when concealment is claimed. College Silk Throwing Co. v. American Credit Ind. Co., 3 Cir., 43 F.2d 668. Bacalis had some cause, in popular estimation, to kill Frank, but Frank had none to kill Bacalis. It is not contended that Bacalis meditated any attack on Frank. The initial difficulty and its first heat had been assuaged both by time and by a settlement. No new cause for violence appears to have arisen. No strong reason for Bacalis to expect to be killed is proven, nor is it clearly proved that he had such a fear before the policy became of force. One might suppose that his later unwillingness to sleep alone was due to such a fear, and that the fear dated back to the negotiation for the policy; but there is no clear and convincing proof of it. It is not even shown that Frank did kill him.

■ Appellant is driven to rely, as it does, on the position that the jury might believe the prior statements of the impeached witnesses as the real truth. We think these statements not made in the presence of the insured or anyone representing the policy are only hearsay which could not have been introduced at all except for the purpose of impeaching the witnesses whom the Insurance Company had introduced, and then only on a showing to the court that it ought not to be bound by what they had testified because it had been entrapped by them. The former statements were admitted only to destroy the credit of the witnesses, to annul and not to substitute their testimony. An ex parte statement does not become evidence of its contents because it misled a litigant into swearing its maker as a witness. If it can be shown that an important witness has by the opposing litigant been induced to change his testimony a situation may arise capable of proof as a circumstance, but it is the conduct of the opposite party that is really proved; just as it is when a statement is made in his presence which if untrue he ought to deny but does not. It is not the statement but the opposing party's conduct with reference to it that becomes evidence. No conduct of either the dead or the suing Bacalis was shown to have caused a change in the testimony of these witnesses. They stand repudiated and impeached by the Insurance Company. Not only are the impeaching statements not evidence, but the credit of their makers as to what they now swear is weakened. This is but another reason for saying that the evidence wholly fails to be clear and convincing that the pleas are true, but only raises a suspicion that they may be.

The judgment is affirmed.