SILBERMAN, Chief Judge.
 

 Following a traffic stop, Lidia M. Gizaw was arrested after the police discovered a suitcase containing cannabis in the trunk of the car she was driving. A jury found her guilty of trafficking in cannabis; possession of a conveyance used for trafficking, sale, or manufacturing of controlled substances; and possession of drug paraphernalia. We reverse because, in this constructive possession case, the State failed to establish Gizaw’s knowledge of the presence of the cannabis or her dominion and control over the suitcase containing the cannabis.
 

 The evidence presented during trial established that at 2:00 a.m. on April 14, 2009, Deputy Butler pulled over a silver Toyota Corolla for speeding. Gizaw, the driver of the car, produced her driver’s license. The passenger produced identification in the name of Michael Desamours, and a records check showed that Desam-ours was on probation for drug-related offenses.
 

 Deputy Butler radioed for backup, and Deputy Sellers responded. Deputy Butler then asked Gizaw for permission to search the car for illegal narcotics. Gizaw asked why he wanted to search, and Deputy Butler told her it was because he had received information that the passenger was on probation for drug-related offenses. Gizaw told the deputy there were no drugs in the vehicle but gave him permission to search.
 

 Deputy Butler searched the car’s interi- or. He detected a faint odor of raw cannabis that appeared to be a residual smell,
 
 *216
 
 but he found no drugs. Deputy Butler explained there is a difference between the smell of raw and burning cannabis. He acknowledged that not everyone would be familiar with the smell of raw cannabis. In fact, Deputy Butler did not know what raw cannabis smelled like until he started working in law enforcement.
 

 While Deputy Butler searched the interior of the car, Deputy Sellers searched the trunk. As he approached the trunk, Deputy Sellers also detected an odor of raw cannabis. When he opened the trunk, the odor became very strong. Inside the trunk he found a black suitcase containing two bundles of cannabis completely wrapped in duct tape. The suitcase also contained three pair of men’s jeans which appeared to be in the passenger’s size. Next to the suitcase, the deputy found other clothing items and a box of sandwich bags. Behind the suitcase, he found some college text books that belonged to Gizaw. No fingerprints were found on the suitcase or the duct tape, and nothing belonging to Gizaw was found in the suitcase.
 

 At some point during the encounter with the deputies, the passenger admitted that he had given Deputy Butler a false identification. The passenger admitted his real name was Kebra Nelson, and he was Gi-zaw’s boyfriend. Gizaw and Nelson were arrested for trafficking in cannabis and transported to the police station. Gizaw was visibly upset and crying, but Nelson was not emotional.
 

 After arriving at the station at approximately 4:00 a.m., Gizaw gave a statement to Detectives Varnadore and Anderson. Gizaw insisted she did not know anything about the cannabis in the suitcase. She and Nelson were returning from Miami after having driven there earlier that day to visit Nelson’s grandmother. Detective Varnadore stated that Gizaw did not know Nelson’s grandmother’s actual name or address, but she had the grandmother’s telephone number on her cell phone. When he asked for permission to call the number, Gizaw refused.
 

 When she was arrested, Gizaw had $939 in cash on her person. According to Detective Anderson, the money was loose and not bundled in the manner commonly used by drug dealers. He acknowledged that Gizaw may have told him that the money was for tuition for her next semester at Hillsborough Community College (HCC). Nelson, who refused to speak to the detectives, had $640 in cash and a razor knife on his person.
 

 Gizaw testified that she was twenty-four years old and a college student at HCC. In April 2009 she was planning to reenroll for the summer semester. She explained that Nelson was her on-again and off-again boyfriend. On April 26, 2009, Gizaw went to Miami with Nelson to visit his grandmother, who was elderly and not feeling well. They left in the Toyota after her morning class. Nelson drove the car to Miami because Gizaw was tired and had a headache.
 

 Gizaw stated that she had never before seen the black suitcase. The suitcase was not in her car when they left for Miami, and she did not access the trunk of the car before they left to return home. When she and Nelson arrived in Miami they visited with Nelson’s grandmother. Gizaw then took a nap because she still had a headache. Nelson kept the keys to the Toyota while they were in Miami.
 

 Gizaw and Nelson left for home late in the evening because Nelson had an appointment early the next morning. Gizaw claimed she did not smell anything in the car. She stated that she does not smoke cannabis and does not know what it smells like. Gizaw admitted that she was speed
 
 *217
 
 ing when Deputy Butler stopped her and that she agreed to a search of her car.
 

 Gizaw explained that she only knew the grandmother as “Mama” and did not know the address of the house. Nelson drove to the grandmother’s house, and Gizaw had not previously been there. Although she had the phone number for Nelson’s grandmother, she did not want to call at 4:00 in the morning to say that she had been arrested. She had been cooperating with Detective Varnadore but then got frustrated by some of the things that he was saying to her.
 

 The jury returned a verdict of guilty as charged on each count. The trial court sentenced Gizaw to forty-two months and three days in prison with a three-year minimum mandatory on count one. On count two, the court imposed a concurrent sentence of forty-two months and three days in prison. The court sentenced Gi-zaw to time served on count three.
 

 Of the three issues that Gizaw raises on appeal, one merits discussion. Gizaw argues that the trial court erred in denying her motion for judgment of acquittal because the State failed to establish her constructive possession of the cannabis. She contends that the State failed to prove that she had knowledge of the presence of cannabis or that she had dominion and control over the cannabis. Because we agree that the State failed to carry its burden of proof, we reverse and remand with instructions to discharge Gizaw.
 
 [1]
 

 This court conducts a de novo review of the denial of a motion for judgment of acquittal and must view the evidence in the light most favorable to the State.
 
 See Pagan v. State,
 
 830 So.2d 792, 803 (Fla.2002). A conviction should be reversed if it is not supported by competent, substantial evidence.
 
 See id.
 

 In order to prove the felony charges in this case, the State was required to establish that Gizaw knowingly possessed the cannabis.
 
 See
 
 §§ 893.135(l)(a)(l), 893.1351(2), 893.147(l)(a), Fla. Stat. (2008). Because Gizaw was not in actual possession of the cannabis, the State was required to prove her constructive possession of the suitcase containing the cannabis.
 
 See Culver v. State,
 
 990 So.2d 1206, 1208 (Fla. 2d DCA 2008). The State thus had to prove that Gizaw knew of the presence of the suitcase with the cannabis inside and was able to exercise dominion and control over it.
 
 Id.
 

 If the area in which the drugs were found had been in Gizaw’s exclusive possession, then knowledge and control could have been inferred.
 
 See Earle v. State,
 
 745 So.2d 1087, 1089 (Fla. 4th DCA 1999). However, Gizaw and Nelson were traveling together in her car, and Nelson had access to the trunk during the visit to Miami. As a result, the State had to establish Gizaw’s knowledge of the cannabis and dominion and control over it by independent proof.
 
 See S.B. v. State,
 
 657 So.2d 1252, 1253 (Fla. 2d DCA 1995) (concluding that knowledge and dominion and
 
 *218
 
 control could not be inferred because the contraband was in a car trunk that was accessible to all of the occupants). This independent proof must establish more than a mere proximity to the drugs.
 
 Culver,
 
 990 So.2d at 1209.
 

 The facts of this case are analogous to those in
 
 K.A.K. v. State,
 
 885 So.2d 405 (Fla. 2d DCA 2004). In
 
 K.A.K.,
 
 the juvenile defendant was the driver of a vehicle that contained three passengers and was involved in an automobile accident. 885 So.2d at 406. When the sheriffs deputy arrived on the scene, he noticed what appeared to be a glass pipe used to smoke drugs on the floorboard of the driver’s side. The deputy searched the car’s interior and discovered a leafy substance that appeared to be cannabis scattered about the driver’s side. In the open glove compartment, the deputy found a box containing rolling papers and tweezers with a burnt tip.
 

 The State filed a petition charging K.A.K. with possession of cannabis and possession of drug paraphernalia for the pipe, rolling papers, and tweezers.
 
 Id.
 
 At the adjudicatory hearing, the State presented the testimony of the sheriffs deputy who searched the car. K.A.K. also testified and claimed she did not know that the contraband items were inside the car. She explained that the impact from the accident was severe, causing loose items inside the car to fly around. While the car had been in her exclusive possession the day before the accident, she had not looked inside the glove compartment and did not know it contained the paraphernalia. She did not see any of the contraband items in the car before getting inside, and no one had any of the contraband items out before the accident.
 
 Id.
 

 The trial court found that the State had failed to establish K.A.K.’s constructive possession of the marijuana or glass pipe.
 
 Id.
 
 But the court found the evidence sufficient to prove her constructive possession of the items in the glove compartment. On appeal, this court reversed as to the items in the glove compartment, concluding that the evidence did not establish a prima facie case of possession.
 
 Id.
 
 at 407.
 

 This court explained that the glove compartment had been open and was accessible to all the occupants before the deputy’s search. It was possible that any one of the occupants had placed the paraphernalia inside the glove compartment between the time of the accident and the time the deputy arrived at the scene. This possibility was bolstered by the fact that none of the other occupants testified and disclaimed ownership of the paraphernalia. The court also determined that the fact K.A.K. was the owner and driver of the car did not constitute sufficient independent proof of her knowledge or dominion and control over the paraphernalia in the glove compartment.
 
 Id.; see also Culver,
 
 990 So.2d at 1209-10 (concluding that the State failed to establish the defendant driver’s constructive possession of cocaine found in a baggie in a brown paper bag located behind the passenger’s seat and noting the absence of “any fingerprint evidence, admissions, eyewitness testimony, or other evidence tending to establish that [the defendant] had dominion and control over” the bag or baggie).
 

 Similarly, in this case the State did not present any independent proof of Gizaw’s knowledge or dominion and control over the cannabis found in the trunk of the car. Although the car was Gizaw’s, Nelson had the keys to it and access to the trunk during the visit to Miami. Also, while the State asserted that Gizaw’s possession of $989 in cash constituted independent proof of her knowledge and dominion and control over the cannabis, no evidence tied the money to drug purchases or sales. The
 
 *219
 
 State’s theory that the cannabis was obtained in a drug buy does not explain why Gizaw still had that large amount of cash after the supposed buy. Further, the State did not present any evidence contrary to the hypothesis that the money was for Gizaw’s tuition.
 

 The State also did not present evidence connecting Gizaw’s trip to Miami to the cannabis in the trunk. The only evidence of Gizaw’s intended destination in Miami was her testimony that she went there to visit Nelson’s grandmother. The State did not present any testimony from Nelson disclaiming ownership of the suitcase that contained the cannabis, and the suitcase had no fingerprints or belongings of Gizaw. Apart from the cannabis, the suitcase only contained jeans that appeared to be in Nelson’s size.
 

 In cases relying on circumstantial evidence, such as this one, the evidence must also exclude any reasonable hypothesis of innocence propounded by the defense.
 
 See Pagan,
 
 830 So.2d at 803. The evidence must “lead ‘to a reasonable and moral certainty that the accused and no one else committed the offense charged. It is not sufficient that the facts create a strong probability of, and be consistent with, guilt. They must be inconsistent with innocence.’ ”
 
 Lindsey v. State,
 
 14 So.3d 211, 215 (Fla.2009) (quoting
 
 Frank v. State,
 
 121 Fla. 53, 163 So. 223, 223 (1935)).
 

 [E]vidence which furnishes nothing stronger than a suspicion, even though it would tend to justify the suspicion that the defendant committed the crime, [ ] is not sufficient to sustain [a] conviction. It is the actual exclusion of the hypothesis of innocence which clothes circumstantial evidence with the force of proof sufficient to convict.
 
 Circumstantial evidence which leaves uncertain several hypotheses, any one of which may be sound and some of which may be entirely consistent with innocence, is not adequate to sustain a verdict of guilt.
 
 Even though the circumstantial evidence is sufficient to suggest a probability of guilt, it is not thereby adequate to support a conviction if it is likewise consistent with a reasonable hypothesis of innocence.
 

 Id.
 
 (emphasis added) (quoting
 
 Ballard v. State,
 
 923 So.2d 475, 482 (Fla.2006)). Thus, this court “ ‘must determine whether competent evidence is present to support an inference of guilt to the exclusion of all other inferences.’ ”
 
 Id.
 
 (quoting
 
 Ballard,
 
 923 So.2d at 485). In cases involving jointly occupied vehicles, the evidence must “exclude every reasonable hypothesis of innocence and rule out the possibility that the [drugs] belonged to the passenger.”
 
 Daniels v. State, 111
 
 So.2d 1113, 1118 (Fla. 4th DCA 2001).
 

 In
 
 Daniels,
 
 the defendant driver was pulled over for a traffic infraction.
 
 Id.
 
 at 1114. Upon stopping the car, the defendant leaned towards the passenger’s floorboard. When the officers approached, they smelled the odor of marijuana emanating from the car. The defendant, who was nervous and agitated, immediately exited the car. The passenger dropped a gray vial in the rear passenger compartment before exiting the car. This vial contained forty-five cocaine rocks. The police discovered baggies of marijuana when they searched the passenger incident to arrest. When they searched the defendant, the police discovered $1031 in cash in his pocket.
 

 The defendant was charged with possession of the cocaine found in the gray vial. At trial, the State presented the testimony of the officers who stopped the car and conducted the search. One officer testified that the denominations in currency possessed by the defendant “were consistent with the sale of crack cocaine.”
 
 Id.
 

 
 *220
 
 The passenger testified that the cocaine in the gray vial belonged to him and that the defendant did not know he had the cocaine in his possession.
 
 Id.
 
 at 1115. The defendant testified that he was a community college student and was childhood friends with the passenger. Although he knew that the passenger sometimes sold drugs, he insisted that he warned the passenger not to bring drugs in the car with him. He explained that he had leaned over into the passenger area to retrieve his license, registration, and proof of insurance. He also had an unrefuted explanation for his possession of the large amount of cash. He said that $800 of it had been given to him by his relatives that morning to pay their utility bills. The remainder of the money had been paid to him for work in a relative’s roofing business. The defendant adamantly denied knowledge of the drugs in the gray vial.
 

 The Fourth District reversed the defendant’s conviction for possession of the cocaine, concluding that the State had failed to present independent proof establishing the defendant’s knowledge of the cocaine or connecting the defendant to the cocaine.
 
 Id.
 
 at 1117. The court rejected the State’s argument that the defendant’s act of leaning towards the passenger area, his nervousness, the odor of marijuana coming from his vehicle, his association with a known drug dealer, and his possession of a large amount of cash constituted sufficient independent evidence of constructive possession. The court concluded that “[t]he evidence failed to exclude every reasonable hypothesis of innocence and rule out the possibility that the cocaine belonged to the passenger.”
 
 Id.
 
 at 1118.
 

 As in
 
 Daniels,
 
 the State’s evidence in this case does not rule out the possibility that the cannabis belonged to the passenger. Gizaw’s testimony was unrefuted that she and Nelson drove to Miami to visit his elderly grandmother, that Nelson had the car keys during the visit, and that he must have placed the suitcase containing the cannabis in the trunk while she was napping. Similar to the situation in
 
 Daniels,
 
 there was no evidence linking her to the container holding the drugs. In both cases, there was an odor of cannabis in the car. But in this case Deputy Butler testified that the odor was a residual, faint odor and it was not one with which everyone was familiar. Gizaw testified that she did not smell anything unusual in the car and explained her lack of familiarity with cannabis.
 

 As with the defendant in
 
 Daniels,
 
 Gizaw had a significant amount of cash in her possession. Unlike in
 
 Daniels,
 
 where an officer testified that the denominations of the money were consistent with the sale of drugs, the detective’s testimony in this case established that Gizaw’s money was not held in the manner commonly used by drug dealers. Further, the defendant in
 
 Daniels
 
 was nervous and agitated, but Gi-zaw was generally cooperative, though upset. Although she would not agree to the detective calling Nelson’s grandmother at 4:00 a.m., it was because she did not want to disturb the elderly woman in the middle of the night and she became frustrated with the accusations against her.
 

 We recognize that, in
 
 Daniels,
 
 the passenger admitted that the cocaine belonged to him and that the defendant did not know he had it. Although Nelson made no such admission in this case, the evidence is nevertheless supportive of his sole possession of the drugs. In fact, the evidence against Nelson supports Gizaw’s reasonable hypothesis. Men’s jeans in Nelson’s size were the only items found inside the suitcase with the cannabis. The only items in the trunk identified as Gizaw’s were found behind the suitcase, and no items identified as Gizaw’s were shown to
 
 *221
 
 have been placed in the trunk after the suitcase. Nelson drove the Toyota to Miami and kept the keys during the visit and during Gizaw’s nap. Finally, while Nelson produced false identification and refused to talk to law enforcement, Gizaw cooperated by giving consent to search and speaking with law enforcement.
 

 In summary, the State failed to present any evidence linking Gizaw to the cannabis other than her mere proximity to it. The State’s evidence failed to establish that Gizaw had knowledge of the presence of the cannabis or dominion and control over the suitcase containing the cannabis. Accordingly, the trial court erred in denying Gizaw’s motion for judgment of acquittal, and we reverse and remand with directions for the court to discharge Gizaw.
 

 Reversed and remanded with directions.
 

 CASANUEVA and LaROSE, JJ., Concur.
 

 [1]
 

 . Gizaw also argues that the trial court erred in allowing the deputy and detectives to testify regarding patterns of behavior related to drug trafficking. She asserts that such testimony about generalized patterns of criminal behavior presented as proof of guilt is improper.
 
 See Austin v. State,
 
 44 So.3d 1260, 1262 (Fla. 1st DCA 2010) ("Testimony about the general behavior of certain kinds of offenders is inadmissible as substantive proof of a defendant’s guilt.”);
 
 White v. State,
 
 971 So.2d 972, 973 (Fla. 4th DCA 2008) ("General criminal behavior testimony based upon an officer’s experience with other cases is inadmissible as substantive proof of a defendant's guilt.”). Her final argument is that she should have been granted a new trial due to newly discovered evidence. Our disposition of the case on the constructive possession issue renders the other two issues moot.