CASANUEVA, Judge.
Michael Schultz appeals his judgments and sentences for burglary of an unoccupied dwelling and grand theft. We agree with Mr. Schultz that the trial court erred in denying his motion for judgment of acquittal as to both charges because the only evidence of his guilt was circumstantial and the evidence was not inconsistent with Mr. Schultz’s reasonable hypothesis of innocence. See State v. Law, 559 So.2d 187, 188 (Fla.1989) (“A motion for judgment of acquittal should be granted in a circumstantial evidence case if the state fails to present evidence from which the jury can exclude every reasonable hypothesis except that of guilt.”). We therefore reverse.

Evidence Presented at Trial

The victim of both offenses, Meon Thomas, testified at trial that on January 20, 2009, she returned to her house sometime around 9 a.m. because she had forgotten her lunch. There was a strange white car parked in her driveway. Ms. Thomas pulled in behind the white car, got out of her car, and saw a black hand slam shut a door to her house. This door is located under the carport. She could not tell if the hand belonged to a man, a woman, or a child. Ms. Thomas also saw her microwave fall to the ground.
A man got out of the passenger seat of the white car and asked her to move her car, and he then got in the driver’s seat. Ms. Thomas ran to her neighbor’s house and called 911, and she saw the white car drive across her grass as it left the area. An officer responding to the burglary call saw the white car driving through a ditch as it was leaving the area, and the officer eventually stopped the car. The car was being driven by Mr. Schultz’s cousin, and it belonged to Mr. Schultz’s girlfriend.
Detective Jose Raya testified that after arriving at the victim’s residence, he decided to drive around surrounding neighborhoods. About three and a half blocks away from the burglary, he noticed Mr. Schultz in front of a residence talking on his cell phone. As soon as Mr. Schultz saw Detective Raya’s unmarked police car, he turned away from the car and concealed his face. The detective thought this was suspicious so he parked his car in a field and watched Mr. Schultz. Mr. Schultz walked up to a trailer, climbed the steps to the front door, and knocked on the door.
Realizing that Mr. Schultz did not live at the residence, Detective Raya drove from the field to the driveway of the residence and asked Mr. Schultz to talk to him in front of his car. Mr. Schultz was talking to Dawn Wiley, who had answered the door. Mr. Schultz claimed that Ms. Wiley was his girlfriend. Detective Raya asked Mr. Schultz to come to his car three times before Mr. Schultz complied. The detective testified that when Mr. Schultz turned away from Ms. Wiley, she made a motion with her hand, indicating that she did not know him. Ms. Wiley appeared frightened.
Mr. Schultz said that this was his girlfriend’s home and that he was just visiting his girlfriend. Based on Mr. Schultz’s physical condition, it was obvious that he had been running. Ms. Wiley told the detective that she was not Mr. Schultz’s girlfriend. Ms. Wiley testified that when Mr. Schultz knocked on the front door, he said that he was looking for a guy named Chris who did tattoos. She had never seen Mr. Schultz before that day.
Detective Raya testified that he was not sure what time he saw Mr. Schultz at Ms. *322 Wiley’s residence, but it was before 11 a.m. Dawn Wiley also testified that she was not sure what time Mr. Schultz knocked on the front door and that it was somewhere around 10 or 11 a.m. Detective Raya testified that about an hour after Mr. Schultz was arrested, he received a call to go back to Ms. Wiley’s residence because she had found a jewelry box in her trash can. The trash can was next to the steps that led to Ms. Wiley’s front door, where Mr. Schultz had been standing. Detective Raya took the lid off the trash can, and the jewelry box was under a bag of trash.[1] Although the area had been searched when Mr. Schultz was arrested, Detective Raya testified that he did not see anyone go through the trash can. Latent fingerprints were found inside the victim’s house, but none of the prints belonged to Mr. Schultz.
After being arrested, Mr. Schultz told police that he walked his daughter to school that morning and left his car at home. His cousin called him and told him that he and another man had borrowed the car. Mr. Schultz said he did not know what the two men did with the car. Mr. Schultz further stated that he knew Ms. Wiley from seeing her in a store and that he went to her house that morning to ask her for a light for his cigarette. Mr. Schultz denied knowing anything about the burglary or the jewelry box in the trash can.
At trial, Mr. Schultz testified that he walked his daughter to school, bought cigarettes from a Citgo, and then looked for an acquaintance named Chris who does tattoos. Mr. Schultz decided to knock on a trailer door to ask if anyone knew where Chris lived. However, Mr. Schultz saw Ms. Wiley open her door and asked if she knew Chris. He denied knocking on her door and denied that the detective had to ask him more than one time to walk to the police car.

Law on Circumstantial Evidence

“Where the only proof of guilt is circumstantial, no matter how strongly the evidence may suggest guilt, a conviction cannot be sustained unless the evidence is inconsistent with any reasonable hypothesis of innocence.” Law, 559 So.2d at 188.
The circumstantial evidence must establish to a reasonable certainty “ ‘that the accused and no one else committed the offense charged. It is not sufficient that the facts create a strong probability of, and be consistent -with, guilt. They must be inconsistent with innocence.’ ” Lindsey v. State, 14 So.3d 211, 215 (Fla.2009) (quoting Frank v. State, 121 Fla. 53, 163 So. 223, 223 (1935)). “While the state does not have to rebut every possible event variation that might be inferred from the evidence, it has to produce evidence that contradicts the defendant’s theory.” Graham v. State, 56 So.3d 97, 101 (Fla. 4th DCA 2011) (citing Haugabrook v. State, 827 So.2d 1065, 1068 (Fla. 2d DCA 2002)). We review the denial of Mr. Schultz’s motion for judgment of acquittal de novo, viewing the evidence in a light most favorable to the State. See Gizaw v. State, 71 So.3d 214, 217 (Fla. 2d DCA 2011).
The facts in the present case are similar to those in Bronson v. State, 926 So.2d 480, 481 (Fla. 2d DCA 2006), where the victims’ house was burglarized sometime before 9:30 a.m. and a neighbor told police that he saw an older model white pickup truck in front of the victims’ home between 8:30 and 9 a.m. that morning, when the victims were not home. Police issued a BOLO describing the pickup truck and later that same morning, an older model white pickup truck was stopped about a mile and a half to two miles away from the victims’ *323 home. Id. at 482. The appellant’s father was the driver of the truck, and the appellant was the passenger. The tires on the truck had a distinctive tread that matched the tire tracks left at the victims’ house. The truck contained some of the victims’ property, but the neighbor could not identify either man as the person he had seen at the home.
This court noted that “the circumstantial evidence test protects against a conviction based on impermissibly stacked inferences” and that suspicion “does not satisfy the State’s burden of proving an accused’s guilt beyond a reasonable doubt.” Id. This court held that the trial court erred in denying the appellant’s motion for judgment of acquittal, reasoning that the strength of the suspicion in that case was based solely on the appellant’s proximity to the stolen property an hour or two later in a truck in which he was a passenger. Id. at 483. Similar to Mr. Schultz’s case, there was no evidence placing the appellant at or near the burglarized residence. Id.
This court also noted in Bronson that the inference regarding possession of recently stolen property would not apply because the appellant did not have exclusive possession of the property. Id. at 484. To be entitled to the presumption, “[t]he possession must be more than superficial; it must be conscious and substantial. And, most important, it must be both personal and exclusive.” Id. (citing Garcia v. State, 899 So.2d 447, 451 (Fla. 4th DCA 2005)).
Similarly in Garcia, 899 So.2d at 448, the victim left his house for about ten minutes and when he returned, he saw a red van parked on his lawn, backed up to the front door of his house. When the victim arrived, a woman in the driver’s seat of the van frantically began honking the horn and a Hispanic man with sideburns came out of the house and dove into the van’s front passenger side. The woman drove away and within ten minutes of receiving a BOLO concerning the van, a deputy stopped a van matching the BOLO description. There were four people inside the van, including the appellant, and the van contained the stolen property. None of the latent fingerprints inside the victim’s home matched the appellant, and the victim could not identify the person he saw running out of his house. Id. at 449.
The Fourth District held that there was no competent evidence that was inconsistent with the appellant’s theory of innocence, noting that “[mjere knowledge that an offense is being committed and mere presence at the scene of the crime are insufficient to establish participation in the offense.” Id. at 450. The court also noted that although the inference of guilt from the unexplained possession of the recently stolen property would support a conviction for burglary, such inference only applies when the appellant actually possessed the property. Id. at 451.

Mr. Schultz’s Motion for Judgment of Acquittal

We conclude that the State’s circumstantial evidence was not inconsistent with Mr. Schultz’s hypothesis of innocence, and therefore, the trial court erred in denying his motion for judgment of acquittal. Mr. Schultz’s hypothesis of innocence was that he was in the area because he was walking home from a Citgo store and decided to look for someone named Chris. Although there was conflicting testimony regarding his reasons for approaching Ms. Wiley’s residence, these conflicts are not inconsistent with Mr. Schultz’s hypothesis of innocence that he did not enter the victim’s house. There were no witnesses placing Mr. Schultz at the burglarized home, and none of the latent fingerprints found in the home belonged to him. Although Mr. Schultz was found three and a *324 half blocks away from the burglarized house, neither Detective Raya nor Ms. Wiley was sure regarding what time he arrived at her house. The detective testified that it was before 11 a.m., and Ms. Wiley testified that it was somewhere around 10 or 11 a.m. Taking the evidence in a light most favorable to the State, if Mr. Schultz did arrive at 10 a.m., this would have been an hour after the burglary. His presence near the scene an hour later would not support his conviction. See Remor v. State, 991 So.2d 957, 960 (Fla. 4th DCA 2008) (“Presence near the scene of a burglary, without more, is not enough to support a burglary conviction.” (citing Garcia, 899 So.2d at 450)).
Further, the jewelry box found in the trash can does not support an inference of Mr. Schultz’s guilt. Although an inference of guilt can be made from possession of recently stolen property, Bronson, 926 So.2d at 484, there was no evidence that Mr. Schultz ever had possession of the property. Although Detective Raya was watching Mr. Schultz as he approached Ms. Wiley’s door, he never saw him place the jewelry box in the trash can, and no fingerprints were found on the box.

Conclusion

Accordingly, Mr. Schultz’s judgments and sentences for burglary of an unoccupied dwelling and grand theft are reversed and remanded for the trial court to discharge him.
VILLANTI and MORRIS, JJ., Concur.

. It was later determined that the jewelry box belonged to the victim.