PER CURIAM.
This case is before the Court on appeal from a judgment of conviction of first-degree murder and a sentence of death. We have jurisdiction. See art. V, § 8(b)(1), Fla. Const. Carl Dausch was convicted of the murder and aggravated battery of Adrian Mobley. Because the record lacks sufficient evidence of the perpetrator’s identity, we vacate Dausch’s convictions and sentences.
PROCEDURAL HISTORY
The murder of Adrian Mobley occurred on July 15, 1987. More than fifteen years later, the DNA testing of evidence obtained during the initial murder investigation led to Dausch as a suspect. In 2006, Dausch was indicted for the first-degree murder and sexual battery of Mobley. In 2011, a jury convicted Dausch of first-degree murder as charged and aggravated battery as a lesser included offense of sexual battery. In 2012, Dausch was sentenced to death for the murder conviction and to ten years of imprisonment for the aggravated battery. He now appeals his convictions and sentences.
ISSUES ON APPEAL
On appeal, Dausch raises eleven issues: (1) whether the trial court erred when it denied Dausch’s motion for judgment of acquittal; (2) whether the trial court erred when it denied Dausch’s motion for mistrial due to the testimony of an Indiana law enforcement officer; (3) whether the trial court erred when it allowed the introduction of evidence that Dausch attempted suicide, and whether the court further erred when it refused to allow Dausch to offer a suicide letter in rebuttal; (4) whether the trial court erred when it denied Dausch’s motion for mistrial and a new penalty phase jury due to the misconduct of a juror who conducted improper internet searches before the penalty phase began; (5) whether Dausch’s convictions for first-degree murder and aggravated battery resulted in double jeopardy; (6) whether the trial court erred when it found that the murder was especially heinous, atrocious, or cruel (HAC); (7) whether the trial court improperly instructed the jurors to consider aggravating circumstances that were not supported by competent substantial evidence; (8) whether the trial court erred when it assigned minimal weight to mitigating evidence that Dausch suffers from organic brain damage; (9) whether the death sentence is proportional; (10) whether the standard penalty phase jury instructions violated due pro *515 cess; and (11) whether the trial court erred when it denied relief under Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 158 L.Ed.2d 556 (2002). Because we conclude that the State did not introduce competent substantial evidence of the perpetrator’s identity, our discussion is limited to the sufficiency of the evidence in this case.
FACTS
This was a cold case. The victim, Adrian Mobley, was murdered in July 1987. For more than fifteen years, there was no known connection between the physical evidence and any suspect, until DNA testing eventually led investigators to Dausch. We now turn to the circumstantial evidence on which the State relied to convict Dausch.
The Murder of Adrian Mobley
On the morning of July 15, 1987, the body of Adrian Mobley was found on the side of County Road 475 in Sumter County. Mobley’s body was hogtied with a sheet and severely beaten. His body was found clothed, but his wallet and car were missing. Several hours later, Mobley’s car was spotted near Interstate 65 in White-house, Tennessee. An eyewitness saw a man who generally resembled Dausch abandon the car and walk toward the interstate. The eyewitness contacted the local police department and reported what he saw.
Tennessee law enforcement quickly realized that the abandoned car belonged to a murder victim in Florida and seized the car. The car was processed for evidence, and latent fingerprints were retrieved from the car’s exterior and from a cigarette lighter wrapper found inside of the car. At that time, there were no known fingerprints for comparison. Meanwhile, in Florida, an autopsy was conducted of Mobley’s body, which revealed that he died as a result of blunt trauma to his head and upper. chest. The medical examiner obtained anal swabs that revealed the presence of semen, although Mobley’s body revealed no evidence of sexual trauma.
Dausch as a Suspect
More than fifteen years later, in October 2002, pursuant to a grant that funded DNA testing, the Florida Department of Law Enforcement (FDLE) obtained the anal swabs from the Sumter County Sheriffs Office for further analysis. FDLE forwarded the swabs to Fairfax Identity Laboratories (Fairfax) in Virginia in order to obtain DNA profiles. Later, cigarette butts also retrieved from Mobley’s car were also forwarded to Fairfax for DNA profiling. In 2003, Fairfax extracted DNA profiles from the anal swabs and the cigarette butts. The DNA profile of the anal swabs revealed a mixture of DNA. Fairfax also obtained multiple DNA profiles from the cigarette butts. Fairfax subsequently forwarded its data to FDLE.
Once received by FDLE, the data was reviewed by Dr. Robin Ragsdale, a DNA analyst. Dr. Ragsdale confirmed the data, and the data was entered into the National DNA Database. Subsequently, FDLE received information from the database that identified Dausch as a possible suspect. To follow up on this information, in 2004, Sheriffs detectives traveled from Sumter County to Indianapolis, Indiana, to obtain buccal swabs, fingerprints, and hair samples from Dausch. While in Indianapolis, the Sumter County detectives also met with Rebecca Kelly, the mother of Dausch’s daughter. Kelly gave the detectives a Flagler Beach, Florida, postcard that Dausch mailed to his daughter from Florida on July 8, 1987. Detectives also obtained handwriting samples from Dausch in order to compare the samples to the handwriting on the Flagler Beach postcard. An FDLE forensic document examiner compared Dausch’s handwriting *516 samples with the handwriting on the postcard and concluded that the handwriting on the postcard was probably that of Dausch.

DNA Analysis

The buccal swabs enabled law enforcement to compare DNA obtained from Mobley’s body and his car with Dausch’s DNA. After Dr. Ragsdale extracted a DNA profile from the buccal swabs provided by Dausch, she performed a Short Tandem Repeat (STR) DNA analysis of the DNA extracted from the cigarette butts. Dr. Ragsdale’s comparison of Dausch’s DNA with the DNA extracted from the cigarette butts revealed matches at all thirteen loci. Dr. Ragsdale testified: “[t]he frequency of occurrence of the DNA profile from the cigarette butt is approximately one in two hundred and thirty trillion Caucasians [1 in 230 trillion], one in two point three quadrillion African Americans [1 in 2.3 quadrillion], and one in eight hundred and seventy trillion [1 in 870 trillion] Southeastern Hispanics.”
Dr. Ragsdale also performed an STR analysis of the DNA that Fairfax extracted from the anal swabs. Dr. Ragsdale’s initial analysis identified Dausch as a possible contributor on four of thirteen loci. Dr. Ragsdale concluded that “[t]he frequency at which you would expect someone to contribute to this mixture would be one in forty-six Caucasians [1 in 46], one in a hundred and thirty-nine African Americans [1 in 139], and one in a hundred and fifteen Southeastern Hispanics [1 in 115].”
Later, Dr. Ragsdale re-extracted DNA from the anal swabs and identified a foreign profile that was consistent with Dausch’s profile and matched at two loci. Based on the re-extraction, Dr. Ragsdale testified that “the frequency at which you would expect to find this profile for these two areas of DNA in any given population, are approximately one in two hundred ninety Caucasians [1 in 290], one in seven hundred and ninety African Americans [1 in 790] and one in approximately five hundred Southeastern Hispanics [1 in 500].” Dr. Ragsdale testified that the deviation of all of the statistics is tenfold.
Dr. Ragsdale also analyzed the two semen stains found on the sheet that was used to tie Mobley’s hands and feet. Her analysis revealed that Dausch was not a source of those stains.[1] Dr. Ragsdale’s analysis of the DNA from Mobley’s fingernail scrapings also excluded Dausch as a contributor.

Fingerprint Analysis

The latent fingerprints obtained during the murder investigation were compared to the known fingerprints of Dausch, and the fingerprint retrieved from the cigarette lighter wrapper was matched to Dausch’s fingerprints. Additionally, the palm prints on the rear driver’s side door and above the rear driver’s side door matched those of Dausch.
However, Dausch’s fingerprints were not found in the driver’s immediate area, such as on the steering wheel, radio, gear shift, or door handle. Other items retrieved from the interior of the vehicle and from the crime scene were not linked to Dausch. Additionally, although latent fingerprints of value were identified on Mob-ley’s wallet after it was found near the Florida/Georgia border, the fingerprints did not belong to Dausch.

Pre-trial Suicide Attempt

Although Dausch’s trial was held in December 2011, a trial date had been set for *517 April of that year. On April 3, 2011, on the eve of jury selection, Dausch attempted to commit suicide. He was found unresponsive in his cell in the Sumter County Jail. Several strips of bed linens were tied around his neck. The State relied on this evidence as proof of Dausch’s consciousness of guilt.
The Defense Theory
Dausch’s theory of innocence was that he hitchhiked a ride with the person who actually stole Mobley’s car. Dausch’s former brother-in-law testified that in July 1987, he, Dausch, and other family members and friends traveled from Indiana to Florida in a recreational vehicle and vacationed in Flagler Beach and Tampa. He testified that at the end of their vacation, Dausch left Flagler Beach with the group, and they traveled north on Interstate 95 until they reached Interstate 10 and began traveling west. Dausch, who was anxious to get home to Indianapolis, parted from the group after reaching a rest area on Interstate 10. We now turn to our analysis of the sufficiency of the State’s evidence.
ANALYSIS
It is a fundamental requirement of our criminal justice system that at trial, the State bears the burden of proof beyond a reasonable doubt. In order to satisfy its burden, the State must prove beyond a reasonable doubt every element of the crime charged. Ballard v. State, 923 So.2d 475, 485 (Fla.2006). In this case, in order to prove first-degree premeditated murder, the State was required to prove that the victim, Mobley, is dead, that the death was caused by the criminal act of the defendant, Dausch, and that the killing of the victim was premeditated. Fla. Std. Jury Instr. (Crim.) 7.2.[2]
Once the State obtains a conviction, this Court bears the responsibility of ensuring that in every capital case, sufficient evidence exists in the record to support the conviction. Ballard, 923 So.2d at 482. “If, after viewing the evidence in a light most favorable to the State, a rational trier of fact could find the existence of the elements of the crime beyond a reasonable doubt, sufficient evidence exists to sustain a conviction.” Reynolds v. State, 934 So.2d 1128, 1145 (Fla.2006) (citing Pagan v. State, 830 So.2d 792, 803 (Fla.2002)).
However, in this case, the State relied solely on circumstantial evidence to obtain its conviction, and “where a conviction is based wholly upon circumstantial evidence, a special standard of review applies.” Reynolds, 934 So.2d at 1145 (quoting Darling v. State, 808 So.2d 145, 155 (Fla.2002)). “The special standard requires that the circumstances lead ‘to a reasonable and moral certainty that the accused and no one else committed the offense charged. It is not sufficient that the facts create a strong probability of, and be consistent with, guilt. They must be inconsistent with innocence.’ ” Lindsey v. State, 14 So.3d 211, 215 (Fla.2009) (quoting Frank v. State, 121 Fla. 53, 163 So. 223 (1935)). “Although the jury is the trier of fact, a conviction of guilt must be reversed on appeal if it is not supported by competent substantial evidence.” Ballard, 923 So.2d at 482 (quoting Crain v. State, 894 So.2d 59, 71 (Fla.2004)). “[T]he evidence relied upon to sustain the ultimate finding should be sufficiently relevant and material that a reasonable mind would accept it as adequate to support the conclusion *518 reached.” De Groot v. Sheffield, 95 So.2d 912, 916 (Fla.1957). In this direct appeal, Dausch argues that the State produced insufficient evidence that he was the person who murdered Mobley. Based on our review of the record, we agree and conclude that the State did not introduce competent substantial evidence of the perpetrator’s identity.
Without question, there is competent substantial evidence to place Dausch inside of Mobley’s vehicle. Dausch does not dispute this fact. His presence in Mobley’s car, then, would tend to create a suspicion of Dausch’s guilt. However, suspicion alone is not enough. As we have stated:
Evidence which furnishes nothing stronger than a suspicion, even though it would tend to justify the suspicion that the defendant committed the crime, [ ] is not sufficient to sustain [a] conviction. It is the actual exclusion of the hypothesis of innocence which clothes circumstantial evidence with the force of proof sufficient to convict. Circumstantial evidence which leaves uncertain several hypotheses, any one of which may be sound and some of which may be entirely consistent with innocence, is not adequate to sustain a verdict of guilt. Even though the circumstantial evidence is sufficient to suggest a probability of guilt, it is not thereby adequate to support a conviction if it is likewise consistent with a reasonable hypothesis of innocence.
Ballard, 923 So.2d at 482 (quoting Davis v. State, 90 So.2d 629, 631-32 (Fla.1956)). The circumstantial evidence in this case leaves uncertain Dausch’s hypothesis of innocence and is, therefore, “not adequate to sustain a verdict of guilt.” Id.
The competent substantial evidence in this case links Dausch to Mobley’s car— not to Mobley’s murder. The State was unable to produce any witnesses to the murder. In fact, the State did not produce competent substantial evidence that even placed Dausch in Sumter County at or around the time of the murder. Moreover, the State’s theory that Dausch murdered Mobley, stole his car, and abandoned it in Tennessee is countered by the State’s fingerprint evidence. The fingerprints that were found on the car itself that belonged to Dausch were on the exterior of the rear driver’s side. Dausch’s fingerprints were not found anywhere in the immediate area where the driver sits. Dausch’s fingerprint on a cigarette lighter wrapper merely places Dausch inside of the car, a fact that he does not contest. Additionally, while Mobley’s stolen wallet was found near the Florida/Georgia border along Interstate 75, and it contained latent fingerprints of value, the fingerprints did not belong to Dausch. This evidence is not inconsistent with Dausch’s hypothesis of innocence that he hitchhiked a ride with someone who was already in possession of Mobley’s car.
Moreover, while the State’s DNA evidence may leave one suspicious of Dausch’s guilt, that evidence does not constitute competent substantial evidence of identity. We are mindful that aspects of the State’s DNA evidence included Dausch as a possible contributor, but other aspects excluded him. Dr. Ragsdale testified that Dausch was excluded as a source of the semen stains found on the sheet that was used to bind Mobley’s hands and feet. Dr. Ragsdale also testified that Dausch was excluded as a contributor to the DNA recovered from Mobley’s fingernails. Further, with respect to the anal swabs, Dr. Ragsdale testified that the frequency with which the re-extracted foreign DNA profile could be found in the population is as follows: 1 in 290 Caucasians, 1 in 790 African Americans, and 1 in approximately *519 500 Southeastern Hispanies. These frequencies, which were even more favorable to the State than the frequencies based on the initial analysis of the Fairfax data, were accompanied by a tenfold statistical deviation. Dr. Ragsdale conceded that the impact of the tenfold deviation meant that the frequency with which the DNA profile linked to Dausch could be found in the human population ranged from 1 in 2900 Caucasians to 1 in 29 Caucasians. To that end, even the State candidly admitted in its brief that the DNA evidence relating to the anal swabs was “not as conclusive as some DNA matches.” The State suggests that its DNA evidence was not as strong as it could have been because of the passage of time, but this suggestion is unavailing as we consider the sufficiency of the evidence. Such conjecture forces this Court to speculate as to what the evidence might have been. This we cannot do. Viewed in its entirety, the record lacks competent substantial evidence to support the jury’s verdict.
CONCLUSION
We do not take lightly the result that will flow from our decision today. We have reviewed the entire record in this case with the utmost seriousness and care. Yet, our comprehensive review of this case leaves us with the inescapable conclusion that the evidence is simply insufficient to conclude, beyond a reasonable doubt, that Dausch was the person responsible for murdering Mobley. At best, the evidence presented by the State creates a suspicion of guilt. Therefore, because we conclude that there is a lack of competent substantial evidence to support Dausch’s convictions, we reverse and vacate both of Dausch’s convictions and sentences. We remand this case to the trial court with instructions that a judgment of acquittal be entered.
It is so ordered.
PARIENTE, LEWIS, QUINCE, CANADY, LABARGA, and PERRY, JJ„ concur.
POLSTON, C.J., dissents with an opinion.

. Evidence presented by the defense also excluded the victim, Mobley, as the source of the stains.

. Because we conclude that there was insufficient evidence of sexual battery or robbery to support a felony murder theory, we do not address sufficiency of the evidence with respect to felony murder.